GEORGE T. KNOWLES *d.b.a.* KNOWLES CHEVROLET COMPANY *vs.* LUMBERMENS MUTUAL CASUALTY COMPANY.

JULY 2, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

310

FLYNN, C. J. This action in assumpsit was brought by the insured under a policy of liability insurance to recover from the insurer the amount of money paid by the former to satisfy a verdict obtained against him by a third person, who had sustained accidental injuries while walking on the sidewalk immediately adjoining the insured's premises. In the superior court, at the conclusion of the plaintiff's evidence, the defendant rested its case and moved for direction of a verdict, which was granted by the trial justice. The case is here upon the plaintiff's exceptions to this ruling, to the denial of plaintiff's motion for a directed verdict, and to

other rulings, excluding certain evidence and also refusing to reopen the case to permit additional evidence.

The facts are not disputed. The plaintiff, doing business as Knowles Chevrolet Company, owned and operated an automobile sales and service station in the city of Pawtucket. On December 29, 1937 he purchased a garage liability insurance policy from the Lumbermens Mutual Casualty Company, the defendant, through Stanley N. Chase Company, one of its agents. Specified premiums and the various coverages were stated in this policy, which was paid for and in full force and effect on April 9, 1938. On that date Mrs. Mary E. Gervais, while walking on the sidewalk immediately adjoining the insured's premises, was knocked down and injured by a watch dog, which was maintained by the plaintiff in his garage and which had run therefrom to the sidewalk as the plaintiff, when leaving, opened the door. The dog actually was owned by the plaintiff's son but it had been kept and used by plaintiff as a watch dog on these premises for a year or more; and other dogs had been so kept and used by him before that time.

Mrs. Gervais brought an action against the insured for damages for personal injuries sustained in that accident. Notice thereof was duly given by the plaintiff to the defendant company and after an investigation the insured was told by the defendant's representative that the defendant company would not defend the action or enter into it at all because "he didn't think it was their case". At a trial of that case in the superior court, the plaintiff was defended by his own attorney. A verdict therein was rendered for Mrs. Gervais on November 23, 1939 for damages in the amount of $763.50. The plaintiff paid that amount, and also certain other costs of investigation, counsel and witness fees necessary to his defense of that action, amounting in all to $973.50. Thereupon he brought this action under the policy to recover such damages from the defendant. The policy was introduced in evidence and its provisions will be discussed later. Witnesses for the plaintiff testified that he had kept the

watch dog regularly on the garage premises, day and night. Their testimony was offered also to establish substantially that it was the usual or common custom, in conducting garages of this character, to keep such watch dogs as a protection against theft and as an incident to the occupation, maintenance and use of such premises; that there was no special or other form of policy or rider customarily used by insurance companies to cover the garage owner for liability for damages done by such a watch dog, other than the policy as issued to this plaintiff. These offers of testimony were excluded and they appear in the transcript. They are the bases of certain exceptions.

The plaintiff also offered to introduce a letter writeen by Frank Bishop Company, Inc., insurance underwriters, of Pawtucket, Rhode Island, to Stanley M. Chase Company, through whom the policy had been sold and issued. According to the letterhead, Frank Bishop Company, Inc. appeared to be state agent for the defendant company. The letter referred expressly to this policy by number and description and contained a quotation, which it said was taken from a letter received by the state agent from the defendant's home office, concerning what such policy covered and the reason why the company did not defend the action brought by Mrs. Gervais. This reason was substantially that the dog was not identified by the claimant as the one kept by the insured and it stated that the policy would have covered the case if the dog had been thus identified. This letter was excluded upon objection from the defendant, and it appears in the record for identification.

The material part of the policy shows:

"Insuring Agreements
I. Coverage A—Bodily Injury Liability
To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused

by accident and arising out of such of the operations hereinafter defined as are indicated by specific premium charge or charges in Item 3 of the declaration. . . .

Definition of Operations

Division 1.   Automobile Dealer or Repair Shop

The ownership, maintenance, occupation or use of the premises herein designated, including the public ways immediately adjoining, for the purpose of an automobile dealer or repair shop, and all operations either on the premises or elsewhere which are necessary and incidental thereto, including repairs of automobiles or their parts, and ordinary repairs of buildings on the premises and the mechanical equipment thereof; and the ownership, maintenance or use of any automobile for any purpose in connection with the above defined operations, and also for pleasure use."

The trial justice, in granting the defendant's motion for a directed verdict stated, in substance and effect, that the case resolved itself into a question of law, namely, the legal interpretation of the insurance policy; that the policy insured the plaintiff against liability resulting from an accident and arising out of such of the operations as were thereinafter defined in the policy; that the operations, at least one of them, covered all operations either on the premises or elsewhere which are both necessary and incidental; that there was no evidence that the keeping of a watch dog was *necessary* and *incidental* to the operation of a garage, service station, or salesroom or repair shop; and therefore that there was no evidence to prove any liability for which the plaintiff was protected under the terms of this policy.

If the language of the policy is construed to mean that the insured was covered *only* for liability arising out of such operations as were both *necessary* and *incidental* to the conduct of plaintiff's garage business, the rulings of the trial justice excluding the offers of proof and also granting the defendant's motion for a directed verdict would not constitute reversible error. But the plaintiff contends that the trial justice's construction of the policy erroneously restricted the coverage to only one of the several operations as

therein defined; that there were other operations, as defined expressly in the policy, as to which the plaintiff was not required to prove that the particular operation causing injury to a third person was both necessary and incidental to the conduct of the garage business on these premises. He contends that it was sufficient to show—at least to entitle him to determination of the issue by the jury—that such operation was *customary* and incidental to the ownership, maintenance, occupation or use of such premises as a dealer's garage and repair shop, which constituted the first class in the definition of operations as above quoted from the policy.

The policy required designated premiums for coverage of various so-called operations thereinafter defined. Under such "Definition of Operations" there are two main divisions, the first of which provides for several classes of so-called operations. Whether such definitions coincide exactly with the strict meaning of "operations" is immaterial because the policy has made its own definition of what was to be included as an insured operation. Division 1 provides substantially for three different classes of operations, so called, which are insured. The coverage under each is different and gets broader in the order of their statement. The first class includes the ownership, maintenance, occupation or use of the premises, including the public highways *immediately* adjoining, for the purpose of an automobile dealer or repair shop. This class seems to us to include the operations that naturally or customarily are incidental to the ownership, maintenance, occupation or use of premises for such purposes. The second class broadens the coverage to *all* operations either on the premises or *elsewhere,* which are necessary and incidental thereto. These appear to be operations in the strict sense and, since they were to be covered if conducted on the premises or "elsewhere", it was required that they be both necessary and incidental to the conduct of the business. The third class further extends the coverage to any automobile used "for any purpose" in connection with any of the above-defined operations, and adds even a use for pleasure.

The trial justice seems to have recognized the existence of several classes of operations, so called, which were insured under the policy; but he apparently took the view that the policy required that all such operations must be both necessary and incidental to the conduct of the business in order to come within any coverage in this policy. In our opinion, this view was too narrow. It restricted the plaintiff's insured operations to less than the policy expressly defines. In division 1 of definition of operations the clause "which are necessary and incidental thereto" appears only in the second class of insured operations. That clause clearly modifies only the subject "all operations either on the premises or elsewhere", which immediately precedes it. In our opinion, it does not refer back to the subject matter of the first class at the beginning of that paragraph, namely, the ownership, maintenance, occupation or use of the premises, including the public ways immediately adjoining. At any rate, we are of the opinion that the construction placed by the trial justice on the policy's definition of operations is not the only reasonable interpretation of the express language used in the policy. If it is fairly open to different interpretations it comes within the well-established rule that such an ambiguous insurance policy should be construed most favorably to the insured and against the insurer who wrote the policy. *Bennett Chevrolet Co.* v. *Bankers & Shippers Ins. Co. of New York,* 58 R. I. 16. On this view we think that it was not necessary to show that the "operation" which caused the injury to Mrs. Gervais was both necessary and incidental to the conduct of the business, but that it was admissible to show that the keeping of a watch dog on the said premises was a *customary* incident to the ownership, maintenance, occupation or use thereof as a garage, salesroom and service station.

If such testimony as offered, together with other evidence, be considered most favorably to the plaintiff, which must be done in deciding defendant's motion for a directed verdict, a material issue of fact for determination by the jury was thereby presented, namely, whether the keeping of a watch

dog on such premises was a customary incident to any of the operations that were defined and insured under the first class of the definition of operations. On that view, the trial justice erred in excluding the offers of evidence tending to show that the keeping of a watch dog was customary and incidental to the first class of such operations and in granting the defendant's motion for a directed verdict. Therefore, plaintiff's fourth, fifth, sixth, and ninth exceptions are sustained. In view of this conclusion we need not consider the plaintiff's eighth exception, to the trial justice's ruling refusing to re-open the case, or the second and third exceptions, relating to evidence offered to show in effect that the policy was in the form usually issued to cover injuries caused by a watch dog.

That leaves only the questions whether the trial justice should have permitted the introduction of the letter from the defendant company's state agent, previously described, and whether he should have granted the plaintiff's motion for a directed verdict. As to the letter we are of the opinion that, on the record here, it was not admissible. It contained a quotation, as it stated, from another letter written by the defendant to its state agent concerning this policy; but that original letter was not offered, though apparently available, and no sufficient explanation or other foundation appears in evidence to permit the introduction of such secondary evidence. Plaintiff's first exception is therefore overruled.

We also find no merit in plaintiff's exception to the ruling denying his motion for a directed verdict. On the evidence actually admitted he was not entitled to such a ruling. Since the ultimate question of fact is to be determined by a jury upon evidence that was erroneously excluded by the trial justice, the plaintiff naturally should have an opportunity to introduce such testimony under a proper interpretation of the policy. The defendant likewise should have an opportunity to meet that evidence. Under the circumstances, therefore, we think justice between the parties requires that the plaintiff's seventh exception be overruled.

Plaintiff's fourth, fifth, six and ninth exceptions are sustained; the first and seventh exceptions are overruled; and the other exceptions are not considered.

The case is remitted to the superior court for a new trial.

*Taft & Beane, James L. Taft,* for plaintiff.

*Francis V. Reynolds,* for defendant.