414 So.2d 1124 (1982)
Daniel D. LINDERMAN, a Minor, by His Father, Mother and Next Friends, Daniel J. Linderman and Cheryl D. Linderman, and Daniel J. Linderman and Cheryl D. Linderman, Individually, Appellants,
v.
AMERICAN HOME ASSURANCE COMPANY, a Foreign Corporation, Appellee.
No. 81-2120.
District Court of Appeal of Florida, Second District.
June 4, 1982.
*1125 Herbert H. Hall, Jr., and John R. Overchuck of Maher, Overchuck, Langa, Cate and Lobb, Orlando, for appellants.
Richard M. Georges of Kieffer, Georges & Rahter, St. Petersburg, for appellee.
GRIMES, Judge.
This case involves an interpretation of the service station operations hazard contained in a garage liability policy.
Daniel D. Linderman, a minor, was injured when an automobile in which he was riding as a passenger was struck by a pickup truck which had sped out of control while having its wheels balanced at Larry's Automotive Services. Daniel and his parents sued Larry's and its insurer, American Home Assurance Company, as well as others, for damages. American Home denied coverage under its garage liability policy issued to Larry's. Following discovery, the court entered summary judgment for American Home on the coverage issue, from which this appeal is taken.
In order to decide the issue of coverage, it is necessary to consider in detail the manner in which this accident occurred. Berry Lee Casey, an employee of Larry's, was balancing the rear tires on his personal pickup truck during working hours on the insured premises. His method of operation was to raise the rear end of the truck on the service station's hydraulic lift so that an on-the-vehicle spin type wheel balancer could be applied to the rear wheels. While the back wheels were spinning at 55 miles per hour, the lift lowered thereby permitting the tires to touch the ground. As a result, the truck sped out of the garage and struck the passing vehicle in which Daniel was riding.
Casey stated that he and the other employees were permitted to work on their own cars at the service station. He contended that the lift lowered because of leaks in the mechanism. His employer, Larry Jackson, the owner of Larry's Automotive Services, said that he had recently told his employees not to work on their own cars at the station without his permission and that he had not given Casey permission to balance his car's wheels. He also explained that, in order to balance the wheels, Casey should have lifted the entire car up on the lift and put a safety stand underneath it to keep the lift from lowering. Jackson asserted that there was nothing wrong with the lift and observed that any lift would tend to lower as a result of the vibrations caused by the manner in which *1126 Casey was attempting to balance the wheels.
The American Home policy agreed to cover Larry's Automotive Services for bodily injury "caused by an occurrence and arising out of the service station operations hazard." The service station operations hazard was defined as:
The ownership, maintenance or use of the premises for the purpose of a gasoline service station, and all operations necessary or incidental thereto, herein called "service station operations"... .
In granting the summary judgment, the court found "that the incident sued upon was not such as to be included within the `service station operations hazard' as defined in the insurance policy in question."
A careful analysis of the policy language suggests that the service station operations hazard actually contains two facets of coverage. First, it insures against injuries caused by an occurrence arising out of the ownership, maintenance, or use of the premises for the purpose of a gasoline service station. It also covers occurrences arising out of all operations necessary or incidental to the conduct of the gasoline service station. The term "all operations necessary or incidental thereto" does not modify the preceding definition of coverage but, rather, appears to extend coverage to offsite accidents arising out of operations necessary or incidental to the service station business. The court in Knowles v. Lumbermens Mutual Casualty Co., 69 R.I. 309, 33 A.2d 185 (1943), made this distinction, albeit with slightly different policy language. In that case a watchdog kept at a garage escaped and injured a passing pedestrian. In reversing a directed verdict for the insurer, the court held that the jury could have concluded that the keeping of a watchdog on the premises was customary in the ownership, maintenance, occupation or use of the garage. The court rejected the argument that the policy language which read "all operations either on the premises or elsewhere which are necessary and incidental thereto" limited the preceding coverage for accidents arising out of "the ownership, maintenance, occupation and use of the premises" as a garage. But see Automobile Underwriters, Inc. v. Hitch, 169 Ind. App. 453, 349 N.E.2d 271 (1976), in which the court interpreted similar language to exclude from coverage injuries caused by the malfunction of reloaded shotgun shells sold from a service station because "the sale of shotgun shells is not necessary or incidental to the use of the premises for the purpose of operating a garage."
There are no Florida opinions to guide us. Some of the few cases on the subject are collected in 93 A.L.R.2d 1047 at page 1061 (1964). One case of interest is Jackson v. LaJaunie, 264 La. 181, 270 So.2d 859 (1973), in which the conduct of the service station employee that brought about the accident was more abberant than that of Casey. Yet, the Louisiana Supreme Court sustained liability coverage under a garage operations hazard containing the same wording as the pertinent policy language in the instant case. In that case the employee shot a customer with his pistol because he believed the pistol to be loaded with blank ammunition when he fired it at the customer as a prank. The court observed that it was beside the point that shooting a pistol at a customer is not part of the custom and usage of a service station. The court held that the accident was covered under the broad language of the policy because it arose out of the use of the premises.
American Home suggests that there was no business purpose being served by Casey in balancing the wheels on his own truck. Thus, the accident cannot be covered because it did not result from any conduct directed toward making a profit for Larry's Automotive Services. However, we see nothing in the policy language which makes the existence of coverage depend upon whether the activity which causes the injury constitutes profit-making conduct. The actions of a fulltime employee on the premises during working hours put the truck into motion. In balancing wheels, he was doing an activity regularly associated with the service station business and one which Larry's offered as a service to the *1127 public. We do not believe that the fact that the wheel balancing was being done for the personal benefit of Casey rather than his employer takes the accident out of the language which provides coverage for occurrences arising out of the ownership, maintenance or use of the premises for the purpose of a gasoline service station. If Casey was acting outside the scope of his employment, this is a defense which can be raised against Larry's vicarious liability. See Traynor v. Super Test Oil & Gas Co., 245 So.2d 916 (Fla. 2d DCA 1971).
We reverse the summary judgment for American Home and remand the case for further proceedings.
SCHEB, C.J., and DANAHY, J., concur.