DIXON, Judge.
Plaintiff was injured by an accidental gunshot wound in the store operated by the defendant, Hunt & Whitaker, Inc. The gun that fired the bullet which struck the plaintiff belonged to one of plaintiff’s companions, James Brown. There was judgment in the district court in favor of the plaintiff and against James Brown for $7,747.00, but rejecting plaintiff’s demands against Hunt & Whitaker, Inc. and Hanover Insurance Company, the premises liability insurer of the defendant, Hunt & Whitaker, Inc.
Moss appealed, claiming that the evidence established the liability of Hunt & Whitaker, Inc., and seeking an increase in the award for damages.
Three young Negro men were in the store operated by Hunt & Whitaker, Inc. One had entered with the purpose of pawning his watch. James Brown intended to purchase some cartridges for a 25 caliber automatic pistol which he had in his pocket. At the time of the accident, Brown was engaged in purchasing the cartridges from Preston Johnson, an employee of Hunt & Whitaker, Inc. Brown was flanked by his two companions, with Moss on his left. Brown requested a dollar’s worth of cartridges. A counter separated the three young men from the clerk. The clerk turned his back on the young men, located a box of cartridges of the desired size, turned back to face his customer, counted out ten cartridges on the counter, again turned his back to replace the box of cartridges in its proper position on a shelf, and then faced his customer again. At this time, Johnson told Brown not to load the gun in the store, but Brown was in the act of placing cartridges in the clip. Johnson again told Brown not to load the gun in the store. Brown did not respond, but continued the procedure in which he was engaged, and slipped the clip into the pistol.
Brown’s version of what happened subsequently is completely at odds with the other testimony in the case. Brown said that he laid the gun on the counter, and it discharged when Johnson picked the gun up.
The finding of the district court, amply supported by the evidence, was that Brown placed the clip in the pistol and pulled the slide back (which was necessary to transfer the first cartridge from the clip to the chamber of the pistol) while the gun was pointed directly at Johnson. Johnson, continuing to tell his customer not to load the gun in the store, upon seeing the slide being moved while the gun was pointed at him, undertook to slap the gun away with his hand. It was at this time that the gun discharged, striking the plaintiff in the lower abdominal region. The bullet perforated the plaintiff’s intestines and lodged in his right buttock.
On appeal, the plaintiff contends that Hunt & Whitaker, Inc. and its insurer are liable, even if the facts were as found by the district court. Plaintiff argues that, since Hunt & Whitaker, Inc. were dealers in dangerous instrumentalities such as guns and ammunition, they owed a greater duty than the one usually imposed on storekeepers for the safety of their patrons.
The evidence in this case indicates that the defendant did exercise a high degree of care in attempting to prevent the loading of a dangerous weapon on its premises. The repeated warnings of Johnson were simply disregarded by the defendant Brown. What other practice could have been adopted by Hunt & Whitaker, Inc., or what other action should have been exercised by Preston Johnson has not been suggested by the plaintiff. Plaintiff’s injuries were the result, not of a want of care on the part of Preston Johnson or any other person employed by Hunt & Whitaker, Inc., but of the gross and wanton negligence of the defendant Brown. The *470 immediate, instinctive, and natural reaction of Johnson in quickly shifting the pistol away from himself cannot be held to be negligence.
The plaintiff was a young unmarried man working as a delivery man for a pharmacy for $50.00 a week at the time of his injury. He was hospitalized on three occasions after the injury: the first time for ten days, the second for about six days after an abscess developed and the third five months after the accident when he underwent a surgical closing of the colostomy.
The treating physician testified that six weeks following each operation the plaintiff could have performed his usual work without pain or disability, and with only inconvenience and embarrassment following the colostomy. Six weeks after the closing of the colostomy, the evidence was that the plaintiff had no disability.
The trial court awarded $2,147.00 to the plaintiff for medical expenses, $600.00 for loss of wages, and $5,000.00 as compensation for his injuries, an award which we find to be just and adequate.
The judgment of the district court is affirmed, at the cost of appellant.