253 So.2d 540 (1971)
Carl J. JACKSON, Jr., Plaintiff-Appellant,
v.
Ronald T. LAJAUNIE et al., Defendant and Third-Party Plaintiff-Appellee, and
CONTINENTAL INSURANCE COMPANY, Third-Party Defendant-Appellant.
No. 8482.
Court of Appeal of Louisiana, First Circuit.
September 2, 1971.
Rehearing Denied November 3, 1971.
Writs Granted January 4, 1972.
*542 Philip McMahon, Houma, for plaintiff-appellant.
Ernest A. Kelly, Houma, Lawrence Ernst, New Orleans, J. Louis Watkins, Houma, for defendant-appellee.
Before SARTAIN, BLANCHE and TUCKER, JJ.
SARTAIN, Judge.
This action for personal injuries arose out of a shooting which occurred on March 2, 1966, on the premises of the Super Chief Texaco Service Station at 190 New Orleans Boulevard, Houma, Louisiana.
Plaintiff had just given a check for a gasoline purchase to the proprietor of the station, defendant Ronald T. Lajaunie, and had turned to an employee to get a light for a cigarette. At that time Lajaunie picked up a .22 caliber revolver from behind the cash register, called plaintiff's name and as the latter turned toward him the gun discharged and the bullet struck plaintiff in the chest.
Joined as a defendant in the main demand was Lajaunie's Garage Liability insurer, United States Fidelity and Guaranty Company (U. S. F. & G.). By third party petition, Lajaunie sued his personal liability insurer under a homeowner's policy, Continental Insurance Company, and included a prayer for costs and attorney's fees incurred by him because of Continental's refusal to provide for or afford his defense of the main demand.
The trial judge found that Lajaunie was responsible for Jackson's injuries but that the garage liability policy of U. S. F. & G. did not provide coverage because the injury did not arise out of a "garage hazard" as defined in the policy. In the third party demand, the court held that Continental was liable to Lajaunie under the homeowner's policy in the amount of $25,000.00, the policy limit, and reserved the right of Lajaunie to establish by contradictory motion against Continental the amount of expenses, including reasonable attorney's fees, incurred by him in defense of the suit. The plaintiff Carl Jackson was awarded the sum of $35,000.00 for his personal injuries plus a sum of $3,533.64 for medical expenses not previously paid. (The medical expenses which were proved totaled $5,533.64, but U. S. F. & G. had previously paid $2,000.00 under the medical payments coverage without admitting liability.)
*543 Plaintiff has appealed devolutively contending that the trial judge erred in failing to find coverage under the garage liability policy (which had an applicable limit of $50,000.00) and also that the award is inadequate. Third party defendant Continental has appealed suspensively contending that the trial judge erred in finding coverage under its homeowner's policy and in finding that it was liable to its insured for expenses, including attorney's fees, incurred in this suit.
Except with respect to the amount of the award for plaintiff's damages, we affirm the judgment of the trial court.
The record reveals that the revolver involved in the shooting had been brought to the service station by the nighttime employee, Mr. Willard Rogers, a few weeks earlier. He worked the night shift alone and had become concerned about rumors that the Hell's Angels motorcycle aggregation would be passing through en route to New Orleans for the Mardi Gras festivities. From time to time Mr. Rogers left the pistol at the service station during the day. However, it is clear that the daytime employees were not at all concerned about the Hell's Angels and considered the pistol a thing for diversion or amusement. The business had never been robbed. Several of the daytime employees, including defendant Lajaunie, had loaded the revolver with blanks and fired it occasionally when business was slow. None of them thought it ever contained live ammunition.
Thus it was on the day of the shooting involved herein that Mr. Lajaunie picked up the pistol, apparently intending to play a practical joke on the plaintiff and convinced that the pistol contained blanks as always. Just as plaintiff Jackson turned toward Lajaunie the shot was fired and the bullet struck plaintiff's chest. Mr. Jackson testified that he never saw the pistol and that he did not realize he had been shot. He described his sensations as having seen a sort of flash of light and having felt as though he had had the wind knocked out of him. His legs gave way and he dropped to the floor, losing consciousness within one or two seconds. In a statement given at the hospital twelve days after this incident, Mr. Jackson indicated that he heard a shot and someone laughing at the time but at trial he testified that he did not remember either. A doctor testified that Jackson's memory as to such things would probably have been illogical and unreliable at least for a few days after the operations had been performed. This opinion should be evaluated in light of the testimony, discussed infra, relative to the extent and seriousness of those operations.
The principal issues relative to liability vel non of the two insurers involve an interpretation of the extent of coverage and exclusions contained in the respective policies.
The garage liability policy issued by U. S. F. & G. contained the following pertinent coverage provisions:
"Coverage ABodily Injury Liability; Coverage BProperty Damage Liability
The company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of
A. bodily injury, or
B. property damage to which Part I applies, caused by accident and arising out of the garage operations hazard * * *."
"Garage Operations Hazard
The ownership, maintenance or use of the premises for the purpose of a garage, and all operations necessary or incidental thereto, hereinafter called `garage operations'."
The trial judge found that the injury resulting from the use or misuse of the pistol under the circumstances did not "arise out of" an operation even incidental to the use *544 of the premises for the purpose of a garage and that to rule otherwise would be to distort the clear meaning of the policy language. We quote the following from the Reasons for Judgment, pages 8 and 9:
"The coverage language of a standard Garage Liability Policy is stated to have the following meaning in 1 Long, Law of Liability Insurance
"The words "ownership, maintenance or use of the premises," are intended to cover the liability hazards which may exist in connection with premises operations, * * *.
The phrase, "and all operations necessary or incidental thereto," grants coverage for operations necessary or incidental to the conduct of the principal operations. A necessary operation is readily determinable by considering custom and usage in the business of operating a garage, sales agency, service station, storage garage, or repair shop. The word incidental suggests an operation minor in part but an inseparable part of a garage operation, * * *."
(1 Long, Law of Liability Insurance, Sec. 7.06.)
It is doubly clear from the language quoted above that a Garage Liability Policy does not apply to the incident upon which this suit is based. Shooting a pistol at a customer is not a necessary operation, considering custom and usage in the business of operating a garage, sales agency, service station, storage garage, a repair shop. No prevailing custom or usage of firing pistols at customers is known to exist. Nor is shooting pistols at customers an operation that is a minor but inseparable part of garage operation. It is apparent from the obvious meaning of a Garage Liability Policy that it does not afford coverage of the incident on which the present action is based."
In addition, as noted above, none of the daytime employees thought that this pistol had any sort of serious connection with the operation of the business. Even though there may be instances where a business proprietor is justified in keeping a weapon for protection, we do not think that such was Mr. Lajaunie's intention in this case and his use of the pistol for purposes of pranks cannot be considered an act "arising out of a garage operations hazard" within the clear meaning of the policy language, even though the incident occurred on the business premises.
The trial judge went further, however, and considered a particular exclusion of the garage liability policy:
"Under Coverages A and B, assault and battery shall be deemed an accident unless committed by or at the direction of the Insured." (in this case, defendant Lajaunie)
The court concluded that Mr. Lajaunie had committed an assault but termed the shooting and the injury accidental. We do not think the conclusion was well founded and it was certainly unnecessary. Although Mr. Lajaunie may have wanted to frighten Mr. Jackson, he never intended to commit a battery and, because Mr. Jackson was never aware of what was happening and never saw the pistol, the latter was not placed in apprehension of receiving a battery. See La.R.S. 14:36.
The dismissal of the suit against U. S. F. & G. was amply supported by the finding that the incident was not within the scope of coverage provided by the policy.
Third party defendant Continental Insurance Company urges three exclusionary provisions, seeking to avoid liability under its comprehensive personal liability policy. Only one such exclusion was considered in the trial judge's Reasons for Judgment, viz., the "business pursuits" clause, which provides that coverage shall not apply
"(a) (1) to any business pursuits of an Insured, except under Coverages *545 E and F, activities therein which are ordinarily incident to nonbusiness pursuits, * * *"
For basically the same reasons discussed above, we have no hesitation in affirming the trial judge's finding that Mr. Lajaunie was not engaged in a business pursuit in attempting to play a practical joke on Mr. Jackson. This activity was not associated with Lajaunie's regular duties or with the usual course of business and was not done for the purposes of profit or of expediting the business, factors generally considered pertinent to such a determination.
A Special Exclusion in Continental's policy provided that coverage shall not apply
"(c) * * * to bodily injury or property damage caused intentionally by or at the direction of the Insured;"
Continental's argument is that the trial judge was inconsistent in finding that Mr. Lajaunie had committed an assault for purposes of the garage liability policy exclusion and then in failing to give effect to the similar exclusion in the homeowner's policy. We have already stated that the trial judge's consideration of the issue of assault was unnecessary and the conclusion unfounded. We further find that there is no evidence in the record to indicate that Mr. Lajaunie intended to cause any bodily injury to Mr. Jackson and that the exclusion is inapplicable here.
The third exclusion is the one most heavily relied upon by Continental. The clause provides that coverage shall not apply
"(a) (3) to any act or omission in connection with premises, other than as defined, which are owned, rented or controlled by an Insured * * *".
There is no question that the service station premises were rented and controlled by Lajaunie or that those premises were not included in the defined premises under the policy. The defined premises included only his residence. The contested issue is whether the shooting was "an act or omission in connection with (the service station) premises".
The basic intention of the comprehensive personal liability policy is to cover the insured for all sums which he may become legally obligated to pay as damages because of bodily injury or property damage. The policy then provides certain restrictions and exclusions concerned, on the one hand, with activities of the insured as they relate directly to other persons and, on the other hand, with premises of the insured as the condition of such premises might relate to other persons. Exclusions involving the person-to-person activities include intentional torts and business pursuits, but as to the latter even person-to-person activities resulting in injury are covered if they are ordinarily incident to non-business pursuits and that clause makes no reference to the premises where the injury occurs. On the other hand, the policy clearly provides coverage for acts or omissions in connection with defined premises and carefully defines which premises are included. The exclusionary clause in question merely restricts coverage where liability is incurred because of the condition of the premises owned, rented or controlled by the insured, other than those defined, where the condition is attributable to the act or omission of the insured.
The injury sustained by Mr. Jackson in this case was not related to a premises condition attributable to the act or omission of Mr. Lajaunie and thus the policy exclusion (a)(3) is not applicable. We have been referred to this court's decision in the case of Burroughs v. Employers Liability Assurance Corporation, 198 So.2d 202 (1st La.App.1967), which contains language relative to the phrase "in connection with" in an extended premises clause. The injury in that case occurred when the insured threw a stick at some stray cattle *546 and accidentally struck a person who was helping the insured round up the strays. The court found that the insured was engaged in a business pursuit and held that the homeowner's policy did not provide coverage for that reason. In dictum, the court added that the activities, although on adjacent property, were "in connection with" the farm. The clause quoted by the court, however, was not concerned with activities but rather with defined premises and included the insured's residence and "other premises * * * for use in connection with said residence, except * * * farms". (Emphasis supplied.) The premises in that case were not used in connection with the insured's residence, which fact would have been reason enough to find that they were not included under the extended premises clause, if that determination had been necessary to the decision.
We now turn to the question of quantum. The trial judge awarded plaintiff judgment in the amount of $35,000.00 for personal injuries and $5,533.64 for special damages, less a credit of $2,000.00 previously paid by defendant U. S. F. & G. under the medical payments provision of its policy. Plaintiff contends that the award of $35,000.00 is so grossly inadequate as to constitute an abuse of discretion and should be increased considerably. Cases cited by plaintiff in support of this contention involves awards ranging from $40,000.00 to $75,000.00. We share this view with plaintiff and are of the opinion that the award for personal injuries should be increased from $35,000.00 to $60,000.00.
The bullet entered plaintiff's left chest just below his nipple line, penetrated the chest wall, the pericardial cavity, the upper left portion of the heart, and the anterior portion of the lower lobe of his left lung. It came to rest within the spinal canal at the level of T-8.
The initial surgery was primarily focused on repairing the gunshot wounds without regard to the removal of the bullet. The operation was lengthy and fortunately saved plaintiff's life. The exact location of the bullet could not be determined during the first operative procedure because of X-ray shadows occasioned by extensive internal bleeding. Plaintiff was unconscious or nearly so for some twelve days. When he did regain consciousness and sedatives were somewhat reduced it was noted that plaintiff had lost all sensory feeling from the middle of his chest to his feet. This indicated neurological involvement and X-rays revealed the location of the bullet. On March 16, 1966, a dorsal laminectomy was performed by a neurosurgeon and the bullet removed.
The neurological damage sustained by plaintiff resulted in considerable impairment of the use of his abdominal muscles and legs. Weakened abdominal muscles adversely affect one's ability to control abnormal bowel functions. Injury to plaintiff's nervous system to his legs has resulted in his most serious disability. His recuperative period was long, commencing with just a few hours in a wheelchair, then from the wheelchair to a walker and from the walker to crutches. Finally, as of the day of the trial some twenty-seven months later, it was necessary for plaintiff to use his crutches and to wear a short brace on the left leg to correct his "drop-foot", i.e., a tendency for the toes to touch ground before the heel in a routine walking maneuver.
Under the above enumerated circumstances and conditions we conclude that the award of the trial judge should be increased from $35,000.00 to $60,000.00.
Lastly, defendant Lajaunie, as third party plaintiff, contends that Continental's refusal to defend him in this action renders it liable to him for attorney's fees, statutory penalties and interest under the provisions of L.R.S. 22:658. It should be noted that U. S. F. & G., while denying liability, did in fact provide Mr. Lajaunie with competent counsel and agreed to pay for such defense. The record is not clear *547 as to whether or not all of Lajaunie's expenses in connection with the defense of this suit were fully paid. However, the trial judge reserved to him the right to establish the amount of expenses incurred in defense of this suit by contradictory motion within sixty days after final judgment. The record does not show that U. S. F. & G. seeks the return of or to recover from Continental any of the sums advanced to Lajaunie for his defense. We know of no provision that would permit Lajaunie to recover twice for the value of such services. L.R.S. 22:658 is penal in nature and therefore must be strictly construed. We cannot read into this statute the provision that it is liable to an insured unless that insured sustains a pecuniary loss in the defense of himself. Generally the statute covers any loss sustained by an insured where the policy itself makes the insured the payee. It is for these reasons that any claim by Lajaunie for attorney's fees, penalties and interest must be denied.
Accordingly, for the above and foregoing reasons the judgment of the district court in favor of the plaintiff, Carl J. Jackson, Jr., and against Ronald T. Lajaunie is amended to increase the amount thereof from $38,533.64 to $63,533.64, together with legal interest thereon from date of judicial demand until paid and for all costs of these proceedings. The judgment in favor of Ronald T. Lajaunie, third party plaintiff, and against the Continental Insurance Company, third party defendant, is affirmed save that portion which relates to attorney's fees, and limiting Continental's liability therefor to that portion of attorney's fees and costs incurred by Lajaunie for which he has not been previously compensated, and for all costs of these proceedings, in accordance with the contradictory motion within sixty days provided for in the judgment of the trial court. Finally, the judgment in favor of United States Fidelity and Guaranty Company and against plaintiff, Carl J. Jackson, Jr., dismissing the latter's suit with prejudice is affirmed. The costs of these proceedings as those in the trial court are cast against the Continental Insurance Company.
Amended and affirmed.