270 So.2d 859 (1972)
264 La. 181
Carl J. JACKSON, Jr.
v.
Ronald T. LAJAUNIE et al.
Nos. 51959-51961.
Supreme Court of Louisiana.
December 11, 1972.
Rehearing Denied January 15, 1973.
*860 Borowski, Lofaso, McMahon & McCollam, Philip J. McMahon, Houma, for plaintiff-applicant in No. 51960 and respondents in Nos. 51959 and 51961.
Ernest A. Kelly, Houma, for defendant-applicant in No. 51959, and respondent in Nos. 51960 and 51961.
Watkins, Watkins & Walker, J. Louis Watkins, Jr., Sidney P. Ingram, Houma, for defendant-respondent.
Christovich & Kearney, J. Walter Ward, Jr., New Orleans, for defendant-applicant in No. 51961 and respondents in Nos. 51959 and 51960.
*861 DIXON, Justice.
Plaintiff, while a customer in a filling station operated by defendant Lajaunie, suffered a gunshot wound in the chest. A pistol belonging to an employee of the defendant was in the station. Lajaunie, believing the pistol to be loaded with blank ammunition, fired it at plaintiff as a prank. Very serious and disabling injuries resulted from the shot.
Jackson sued Lajaunie and United States Fidelity and Guaranty Company; Lajaunie brought in Continental Insurance Company through a third party demand. USF&G insured Lajaunie under a "Garage Liability Policy;" Continental had issued a "Homeowners Policy" to Lajaunie which also insured him against personal liability to a limit of $25,000.
In the trial court Jackson obtained a judgment against Lajaunie for $38,533.64, but his demands against USF&G were dismissed. Lajaunie, as third party plaintiff, was given a judgment against Continental for $25,000.
The Court of Appeal increased Jackson's award to $63,533.64, affirmed the dismissal of his suit against USF&G, and affirmed (except for a finding concerning attorney's fees and costs) Lajaunie's judgment against Continental. Jackson v. Lajaunie, La.App., 253 So.2d 540.
We granted writs on the applications of Jackson, Lajaunie and Continental. Jackson complains of both the interpretation of the garage liability policy provisions which allowed USF&G to escape liability and the inadequacy of the award. Lajaunie also complains of the judgment in favor of USF&G and of the increase in quantum by the Court of Appeal. Continental complains of both the failure of the prior courts to give effect to an exclusionary clause in its homeowners policy and of the recognition of the right of its insured to recover attorney's fees and other costs of defense.

USF&G Coverage.
The relevant insuring clauses in the garage liability policy issued by USF&G are:
"The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of
"A. bodily injury or
"B. property damage
"to which Part 1 applies, caused by accident and arising out of the garage operations hazard.
"Garage Operations Hazard
"The ownership, maintenance or use of the premises for the purposes of a garage, and all operations necessary or incidental thereto, hereinafter called `garage operations.'"
The district court found no coverage because "shooting a pistol at a customer is not a necessary operation . . . in the business of operating . . . a service station . . ." The Court of Appeal apparently agreed, and further found that Lajaunie's "use of the pistol for purposes of pranks cannot be considered an act `arising out of a garage operations hazard' within the clear meaning of the policy language, even though the incident occurred on the business premises."
The insuring clause in the garage liability policy is far broader than the interpretation adopted by the prior courts. If a fair interpretation of the insuring agreement provides coverage, and if there is no applicable exclusionary clause, USF&G must be cast.
Although the USF&G policy contains a lengthy section on exclusions, there is no contention that any of them are applicable. Accidental shooting as the result of a prank is not of the same character as any enumerated act for which coverage is excluded. *862 Acts and circumstances for which coverage is excluded include the operation of elevators, racing, construction, accidents covered by workmen's compensation, and accidents involving nuclear material.
This phase of the case, therefore, must be decided by interpreting the scope of the insuring clause alone: is Lajaunie's liability one "arising out of the garage operations hazard?" "Garage Operations Hazard" is further defined:
"The ownership, maintenance or use of the premises for the purposes of a garage, and all operations necessary or incidental thereto, hereinafter called `garage operations.'"
"Garage" is defined to include a service station. All parties except USF&G argue that if this accident arose out of the use of the premises for the purpose of a service station, there is coverage by the USF&G policy. USF&G argues that there is coverage for "premises claims" (slippery floors and other such defects in the premises which result in injury), but that if the injury does not arise out of a defective condition in the premises, coverage is only afforded if the injury arises out of activities necessary or incidental to operation of the garage. Thus, because participation in pranks and horseplay is not necessary or incidental to the operation of the garage, USF&G does not cover the injuries suffered by plaintiff.
The only authority cited by USF&G for this interpretation of the insuring agreement is 1 R. Long, The Law of Liability Insurance § 7.06 (1966). That source cannot be construed to mean that a claim arising out of the use of non-defective premises must also arise out of operations necessary and incidental to service station operation to be covered by the garage liability policy.
The only case found which interprets the "Garage Operations Hazard" in this context holds contrary to the interpretation advanced by USF&G. Knowles v. Lumbermens Casualty Company, 69 R.I. 309, 33 A.2d 185 (1943), held: "ownership, maintenance, occupation or use of the premises" for garage purposes in the "hazard" definition was not modified by the phrase "operations necessary or incidental thereto;" and coverage was afforded an accidental injury arising from the use of the premises for garage purposes even if the "operation" which caused the injury was not necessary and incidental to the conduct of the business. The injury in the Knowles case occurred when a watch dog kept on the garage premises knocked down a lady pedestrian. The court found that keeping a watch dog was not necessary and incidental to the garage operations, but found coverage nevertheless because the accident arose from the use of the premises as a "garage."
"The automobile garage policy affords coverage for many hazards which would ordinarily be covered by separate policies." 1 R. Long, The Law of Liability Insurance § 7.07 (1966). The premises hazard coverage in the policy before us is couched in language similar to that in a premises hazard policy issued to a tavern keeper, interpreted by the Michigan Supreme Court in 1960. The tavern keeper negligently handled a pistol, causing it to discharge, killing a patron. Coverage was afforded for bodily injury in the following language: "To pay. . . all sums which the insured shall become obligated to pay . . . caused by accident and arising out of the hazards hereinafter defined . . . The ownership, maintenance or use, for the purposes stated in the declarations, of premises, or property and all operations occurring during the policy period which are necessary or incidental thereto . . ." The Michigan court affirmed the judgment against the insurer, finding "the accident complained of did arise out of hazards defined in the policy . . ." Young v. Morrall, 359 Mich. 180, 101 N.W.2d 358, 360, 362 (1960).
It answers nothing to argue, as does USF&G, that "shooting a pistol at a customer is not a hazard that exists in connection with premises operations. Shooting a pistol at a customer is not a necessary *863 operation, considering custom and usage in the business . . . No prevailing custom or usage of firing pistols at customers (exists) . . . Nor is shooting a pistol at a customer an operation that is minor but an inseparable part of garage operations."[1]
It is admitted that the shooting was accidental. It is irrelevant that shooting customers is not normally anticipated in service station operations. If the accident is one "arising out of . . . use of the premises for the purposes of a (service station)," which is the language of the policy, the insured and his victim are protected.[2] The plaintiff was at the station to buy gasoline from the defendant, an acquaintance of long standing. He was visiting with him near the cash register after paying for the gasoline when he was shot by Lajaunie, whose only thought was to frighten Jackson by firing the pistol which he mistakenly believed to be loaded with blank ammunition. The broad language of the garage liability policy's insuring clause covers this accident.

Continental's Exclusion.
The Continental Insurance Company had issued a "homeowners" policy to Lajaunie. Under "Section II" Lajaunie was protected against personal liability. The insuring agreement was "to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury."
This broad coverage is restricted in the exclusionary clauses. Continental relies on the following portion of the first paragraph under "Special Exclusions"paragraph (a):
"Section II of this Policy Does Not Apply:
"(a)(1) to any business pursuits of an Insured, except under Coverages E and F, (personal liability and medical payments) activities therein which are ordinarily incident to non-business pursuits, (2) to the rendering of any professional service or the omission thereof, or (3) to any act or omission in connection with the premises, other than as defined, (the defined premises being Lajaunie's home, and not the service station) which are owned, rented or controlled by an Insured, . . ."
The Court of Appeal found, and we agree with the conclusion, that exclusion (a)(1) does not avail Continental. That clause excludes from coverage business pursuits, unless the activities leading to the injuries complained of are also ordinarily incident to non-business pursuits. The Court of Appeal found that Lajaunie was not engaged in a business pursuit while attempting to play the practical joke on Jackson. Practical jokes are "ordinarily incident to non-business pursuits" and are excepted from the exclusion.
Special exclusion (a)(3), however, is the basis for the principal defense of Continental. The homeowners policy does not apply to any act in connection with any premises, except the home, which are *864 owned, rented or controlled by Lajaunie. Therefore, Continental argues that if Jackson was injured by an act "in connection with" the service station, exclusion (a)(3) is applicable and Continental is not responsible.
"In connection with" is a broader term than "arising out of the use of the premises for the purposes" of a service station.[3] If a claim is made as the result of any act in connection with the service station premises, the exclusionary clause of the homeowners policy is applicable. The conclusion is inescapable that this prank was an act "in connection with" the service station premises. The Court of Appeal interpreted the exclusionary clause to refer to a condition of the premises, concluding that the exclusion was only applicable if the injury was incurred because of the condition of the service station premises. No authority was cited to support this interpretation.
In 1962 the U.S. Court of Appeals for the Eighth Circuit interpreted the "in connection with" phrase in the exclusionary clause of a homeowners policy in Roth v. Western Assurance Company, 308 F.2d 771. A workman employed by the homeowner was injured when a ladder broke. He was working on a building located away from the home of the insured. The homeowner contended that furnishing the ladder had no legally important connection with the excluded premises. The Court of Appeals ruled otherwise, stating that the ladder was being used in connection with the excluded premises, resulting in no coverage.
Exclusionary clause (a) in the Continental policy first removes from coverage business pursuits; then it makes an exception from the exclusion, and includes business pursuits which are ordinarily incident to non-business pursuits. Then follows exclusion (a)(3) which makes the policy inapplicable to any act, whether a business pursuit or a non-business pursuit, done in connection with the service station. It cannot be said that this prank had no connection with the station. It happened at the station. The parties were present because of the stationone to sell and the other to buy gasoline. The gun was present because of the station; an employee had brought it there for protection because of a rumored invasion of motorcycle toughs. This tragic prank was linked to the station, associated with the station, related to the station and, in the absence of a new and restrictive definition of an old and well understood word, connected with the station. Therefore, Continental's homeowners policy does not afford coverage for this accident.
Since the petition alleged the facts, and the facts showed that coverage was excluded, there was no obligation on the part of Continental to defend Jackson's claim. See Rancatore v. Evans, 182 So.2d 102 (La.App.4th Cir. 1966), Smith v. Insurance Company of the State of Pennsylvania, 161 So.2d 903 (La.App.1st Cir. 1964), C. A. Collins & Son v. Pope Bros. Steam Cleaning Company, 155 So.2d 278 (La.App.2d Cir. 1963).

Quantum.
Defendants complain of the increase in the award by the Court of Appeal from $35,000 to $60,000. Plaintiff contends that the increase was not sufficient. The Court of Appeal accurately recapitulated the evidence concerning the injury:
"The bullet entered plaintiff's left chest just below his nipple line, penetrated the chest wall, the pericardial cavity, the upper left portion of the heart, and the anterior *865 portion of the lower lobe of his left lung. It came to rest within the spinal canal at the level of T-8.
"The intial surgery was primarily focused on repairing the gunshot wounds without regard to the removal of the bullet. The operation was lengthy and fortunately saved plaintiff's life. The exact location of the bullet could not be determined during the first operative procedure because of X-ray shadows occasioned by extensive internal bleeding. Plaintiff was unconscious or nearly so for some twelve days. When he did regain consciousness and sedatives were somewhat reduced it was noted that plaintiff had lost all sensory feeling from the middle of his chest to his feet. This indicated neurological involvement and X-rays revealed the location of the bullet. On March 16, 1966, a dorsal laminectomy was performed by a neurosurgeon and the bullet removed.
"The neurological damage sustained by plaintiff resulted in considerable impairment of the use of his abdominal muscles and legs. Weakened abdominal muscles adversely affect one's ability to control abnormal bowel functions. Injury to plaintiff's nervous system to his legs has resulted in his most serious disability. His recuperative period was long, commencing with just a few hours in a wheelchair, then from the wheelchair to a walker and from the walker to crutches. Finally, as of the day of the trial some twenty-seven months later, it was necessary for plaintiff to use his crutches and to wear a short brace on the left leg to correct his `drop-foot', i. e., a tendency for the toes to touch ground before the heel in a routine walking maneuver.
"Under the above enumerated circumstances and conditions we conclude that the award of the trial judge should be increased from $35,000.00 to $60,000.00." (Jackson v. Lajaunie, La.App., 253 So.2d 540, 546).
Plaintiff was born in 1940. He had been married about five years at the time of the trial, and had two sons, one conceived after the accident. In spite of the terrible injuries from the bullet wound, he returned to work about three months after the accident, and within another three or four months he was back at his old job as a bank teller. No loss of earningspast, present or futurewas proved.
We will not disturb the quantum fixed by the Court of Appeal. The district court did not give adequate weight to the evidence concerning plaintiff's injuries and disabilities, and the Court of Appeal was justified in increasing the award. The award fixed by the Court of Appeal is neither inadequate nor excessive. Such serious injuries and disabilities in a young man would support a much higher award if there were, in addition, loss of earnings proved. Fortunately, this plaintiff did not suffer the economic loss which might be expected.

Decree.
For these reasons, the judgment of the Court of Appeal is reversed in part and affirmed in part: there is now judgment in favor of Carl J. Jackson, Jr., and against Ronald T. Lajaunie and United States Fidelity and Guaranty Company, in solido, in the amount of $50,000, and further judgment against Ronald T. Lajaunie in the amount of $13,533.64, all with legal interest from the date of judicial demand until paid, and for all costs; there is judgment in favor of Continental Insurance Company, third party defendant, and against Ronald T. Lajaunie, third party plaintiff, rejecting third party plaintiff's demands against third party defendant, at the costs of third party plaintiff.
BARHAM, J., concurs in part and dissents in part with reasons.
TATE, J., concurs in part and dissents in part with written reasons.
*866 TATE, Justice (concurring in part, dissenting in part).
I concur with the majority's holding that the USF&G garage liability policy provides coverage. The insuring clause thereof is to be broadly interpreted, under usual rules of policy construction. The majority opinion excellently analyzes and applies the law relative thereto.
However, I do not think that the exclusion clause of Continental Insurance Company's homeowner's policy, which should be strictly construed in line with usual interpretative principles applicable to insurance policies, applies so as to avoid coverage.
As the majority notes, Continental's comprehensive personal liability coverage broadly insures the policyholder for all sums for which he became legally liable to pay as damages because of bodily injury or property damage. The exclusion clause provides that such coverage "does not apply to . . . any act or omission in connection with premises, other than as defined [mainly the residence], which are owned, rented or controlled by" the insured.
The majority's opinion is persuasive in its conclusion that the horseplay on the garage premises rented by the insurednot within the premises defined by the policy was "in connection with" such non-covered premises and therefore excluded. However, I agree with the court of appeal and the trial court that such broad construction, favorable to the insurer which wrote the contract, should not be followed; for the excluding clause is open to a narrower interpretation which affords insurance protection to the policyholder.
The term "connection" includes among its meanings: "relationship or association in thought (as of cause and effect, logical sequence, mutual dependence or involvement)". Webster's Third New International Dictionary, verbo "connection" (meaning 3) (1961). Thus, where (as here) restrictive interpretation of the phrase "in connection with" is required, the courts have construed the phrase to mean "caused by", Duggan v. Travelers Indemnity Co., 383 F.2d 871, 29 A.L.R.3d 847, 855 (CA 1, 1967), or "arise out of", Burgunder v. Weil, 60 Ohio St. 234, 53 N.E. 1096, 1097 (1899), or otherwise directly grown out of (rather than being incidentally connected with), Ross v. Ross, 48 Cal.App.2d 72, 119 P.2d 444, 447 (Cal.App.1941), Pepsico, Inc. v. W. R. Grace & Co., 307 F.Supp. 713, 720 (S.D.,N.Y.,1969).
In my opinion, in interpreting this exclusion clause,[1] the court of appeal therefore correctly held, 253 So.2d 545: "The exclusionary clause in question merely restricts coverage where liability is incurred because of the condition of the premises owned, rented or controlled by the insured, other than those defined, where the condition is attributable to the act or omission of the insured." (Italics mine.)
The decision in Duggan v. Travelers Indemnity Co., 383 F.2d 871, 29 A.L.R.3d 847 (CA 1, 1967) reaches a similar result in rejecting an exclusion claim similar to the present. There, a husband and wife owned a beauty parlor operated by the wife. The husband left his dog there when he went on an errand, and the dog bit a customer. A $10,000 premises liability policy covered the claim (as arising out of the use of the premises), but the insurer issuing a $20,000 comprehensive personal liability policy denied coverage, relying upon a clause excluding *867 "any act or ommission in connection with [business] premises." (Italics mine.)
The court pointed out that one meaning of the clause was to exclude "anything that happened on the premises". 29 A.L.R.3d 855. Instead, in rejecting this broad meaning of the exclusion clause, the court held that it excluded only "any result caused by the condition or operation or neglect of the premises" 29 A.L.R.3d 855, in accordance with its duty to construe exclusionary clauses strictly.
The court explained: ". . . the dog was not usually in the beauty parlor but had been left there temporarily while appellant's husband brought home some parcels. The accident could as well have happened on the streets or in a store. That it happened on business premises did not make it `in connection with' those premises." 29 A.L.R.3d 855.
For similar reasons, I believe the present exclusionary clause does not apply: The horseplay with the gun was not caused by the condition or operation or neglect of the excluded garage premises. It was not therefore an act or omission "in connection with" the garage premises. It could as well have occurred on the street or in a field or at home.
The writer therefore respectfully dissents.
BARHAM, Justice (concurring in part and dissenting in part).
I concur in that part of the opinion and judgment which awards plaintiff a judgment against Ronald T. Lajaunie and United States Fidelity & Guaranty Company. I dissent from that part of the opinion and judgment which rejects Lajaunie's third party petition against Continental Insurance Company under his "Homeowner's Policy" for the reasons assigned by Mr. Justice Tate in his dissent.
NOTES
[1] Although shooting customers is rare, shooting is not unknown in connection with business pursuits. See, e. g., Byas v. Hotel Bentley, 157 La. 1030, 103 So. 303 (1925), Conaway v. Marine Oil Company, 162 La. 147, 110 So. 181 (1926), Jefferson v. Rose Oil Company of Dixie, 232 So.2d 895 (La.App.2d Cir. 1970), Moss v. Hunt & Whitaker, Inc., 231 So.2d 468 (La.App.2d Cir. 1970), Cavalier v. American Employers Insurance Company, 170 So.2d 713 (La.App. 1st Cir. 1964), Long v. Hardware Mutual Insurance Company, 137 So.2d 486 (La.App.4th Cir. 1962), Goins v. Shreveport Yellow Cabs, 200 So. 481 (La.App. 2d Cir. 1941), Holland v. Continental Casualty Company, 155 So. 63 (La.App. 2d Cir. 1934), Schexneider v. General American Tank Company, 5 La.App. 84 (Orl.Cir. 1926).
[2] R.S. 22:655 provides, in pertinent part, that: "It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons, his or her survivors or heirs, to whom the insured is liable; . . ."
[3] For examples of interpretation of "in connection with" as used in insuring clauses (as contrasted to exclusionary clauses) see Keenan v. Wactor, La.App., 130 So.2d 800 (1961), Daire v. Southern Farm Bureau Casualty Insurance Company, La.App., 143 So.2d 389 (1962). Burroughs v. Employers Liability Assurance Corporation, La.App., 198 So.2d 202 (1967), involved a homeowners policy and the interpretation of "in connection with" in the definition of "premises."
[1] Of course, in interpreting the phrase "in connection with" in an insuring agreement, it must be given one of its broader and more inclusive meanings (e. g., related to or associated with), since construction must be in favor of coverage where there is ambiguity. Daire v. Southern Farm Bureau Cas. Co., 143 So.2d 389 (La.App.3d Cir. 1962); Keenan v. Wactor, 130 So.2d 800 (La.App.3d Cir. 1961).