463 So.2d 1327 (1984)
Billy Wayne ARMSTRONG
v.
LAND & MARINE APPLICATORS, INC., et al.
Billy Wayne ARMSTRONG
v.
LAND & MARINE APPLICATORS, INC., et al.
Nos. 84-CA-509, 84-CA-247.
Court of Appeal of Louisiana, Fifth Circuit.
November 13, 1984.
Rehearing Denied February 28, 1985.
Writs Denied April 12, 1985.
Craig R. Nelson, Hulse, Nelson & Wanek, New Orleans, for plaintiff-appellee.
Thomas E. Loehn, Joseph L. von Rosenberg, III, Boggs, Loehn & Rodrigue, New Orleans, for defendant-appellant.
Before BOUTALL, CURRAULT and GRISBAUM, JJ.
CURRAULT, Judge.
This is an expedited appeal of a summary judgment granted to third-party plaintiff, Clemco Industries (Clemco) in a worker's *1328 compensation case against third-party defendant, Commercial Union Insurance Company (Commercial Union)[1].
The facts reveal that on or about August 31, 1981, plaintiff, Billy Wayne Armstrong, filed suit against various defendants, including Clemco. Plaintiff alleged that he had contracted a lung disease known as silicosis as a result of his working as a sandblaster-painter for various employers from 1962 through 1979, but that he first learned of his disease on June 19, 1981.
Clemco subsequently filed a third-party demand against Commercial Union, alleging that Commercial Union issued policies of liability insurance to Clemco, effective from August 1, 1970 until September 30, 1976, and that Commercial Union owed indemnification and its pro-rata share of Clemco's future defense costs.
Commercial Union filed an answer denying indemnity and the duty to defend on the basis that the period of coverage expired five years prior to the bodily injury.
Third-party plaintiff, Clemco, subsequently filed a motion for summary judgment on these issues; and on July 3, 1984, the motion was granted and defendant was ordered to defend Clemco in this suit.
As a result, third-party defendant, Commercial Union, perfected this appeal of the summary judgment granted in Clemco's favor.
Appellant, Commercial Union, alleges that the trial court erred in granting the motion of Clemco for summary judgment and ordering Commercial Union to participate in Clemco's defense, where the Commercial Union policy, on its face, clearly does not provide coverage for the injuries alleged by plaintiff.
Prior to resolving the issue raised by appellant, the court must first determine which state law applies as appellee argues that California law is applicable to the duty to defend in this case. We disagree.
The Louisiana Supreme Court in Jagers v. Royal Indemnity Company, 276 So.2d 309 (La.1973) adopted the "interest analysis" theory as the proper approach for resolving choice of law problems in uninsured motorists policies written in other states citing with approval Restatement, Second, Conflict of Laws, 86 (1969). Of interest is the statement by the court as follows:
"Conflict of Laws is that part of the law of each state which determines what effect is given to the fact that the case may have a significant relationship to more than one state." Restatement, Second, Conflict of Laws, § 2 (1969). A false conflict occurs when it is found that only a single state has an interest in the application of its law, and that the other state involved has no interest in the application of its law in the case."
Since the Jagers decision, the interest analysis test has been applied in the following cases involving uninsured motorist insurance coverage in policies written in states other than Louisiana. Wilson v. State Farm Insurance Co., 448 So.2d 1379 (La.App. 2d Cir.1984); Sutton v. Langley, 330 So.2d 321 (La.App. 2d Cir.1976); Brawner v. Kaufman, 496 F.Supp. 961 (E.D.La.1980); Bell v. State Farm Fire & Casualty Co., 527 F.Supp. 300 (W.D.La. 1981); Bell v. State Farm Mut. Auto. Ins. Co., 680 F.2d 435 (5th Cir.1982); Jones v. American Fire-Indemnity Insurance Company, 442 So.2d 772 (La.App. 2d Cir. 1983). See also Wickham v. Prudential Ins. Co. of America, 366 So.2d 951 (La. App. 1st Cir.1978). In Champion v. Panel Era Mfg. Co., 410 So.2d 1230 (La.App. 3d Cir.1982), the interest analysis was applied in cases involving non-auto insurance policies to find the foreign insurance contract governed by the law of Louisiana. On the other hand, the approach was rejected in Richard v. Beacon Nat. Ins. Co., 442 So.2d 875 (La.App. 3d Cir.1983); and Abel v. White, 430 So.2d 202 (La.App. 4th Cir. 1983).
We agree with the court in Wilson, supra, that Jagers and its progeny "represent *1329 sound public policy designed to permit Louisiana courts to apply to situations requiring choice of law where Louisiana interest is sufficient to mandate this result." At page 1382.
In this case, the alleged injury occurred in Louisiana, purportedly by a product used for many years in Louisiana. California has no significant interest in the application of its law relative to either the duty to defend or the question of insurance interpretation. Consequently, this is a false conflict and we hold that Louisiana law applies to this case.
Appellant argues that the contract provision and the jurisprudence mandates that the injury manifest itself during the policy term in order to trigger coverage and thus the duty to defend.
In Cute-Togs of New Orleans, Inc. v. Louisiana Health Service & Indemnity Co., 386 So.2d 87, 89 (La.1980), the Louisiana Supreme Court reiterated the rule regarding the insurer's duty to defend as follows:
"In American Home Assurance Co. v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969), we clearly stated the `duty to defend' rule as follows:
`... the insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. * * *
`Thus, if, assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. Additionally, the allegations of the petition are liberally interpreted in determining whether they set forth grounds which bring the claims within the scope of the insurer's duty to defend the suit brought against its insured. * * * 230 So.2d at 259. [cits. omitted]"
Plaintiff alleges in the petition, in pertinent part, that: ...
III
Plaintiff over the approximate period 1962 through 1979 worked as a sandblaster/painter for various employer-defendants, as hereinafter indicated.
XVIII
During the period of plaintiff's employment in the sandblasting-painting industry, as aforedescribed, plaintiff utilized non-air fed hoods provided by his employers which were manufactured and sold by Pulmosan Safety Equipment Company and/or Clemco Industries.
XXII
As a direct consequence of plaintiff's sandblasting activities as aforedescribed, he was caused to contract the incurable lung disease known as silicosis and, as a direct consequence thereof, plaintiff is permanently and totally disabled.
XXIII
Plaintiff did not become aware of the fact that he had silicosis as a result of the use of silica abrasives and non-air fed hoods until receipt of the report of Dr. Hans Weill on or about June 19, 1981.
XXIV
Plaintiff's contraction of silicosis was a direct result of his use of non-air fed hoods and silica abrasives during the course of his employment in the sandblasting-painting industry.
XXX
Pulmosan Safety Equipment Company and Clemco Industries a/k/a Clemco-Clementina Limited, are absolutely liable unto plaintiff in that the hoods sold by them to plaintiff's employers, and used by plaintiff in his employment for the purpose for which they were sold, were not fit for the purpose for which they were sold (sandblasting) and were the direct cause of plaintiff's contraction of silicosis.

*1330 XXXI
Pulmosan Safety Equipment Company and Clemco Industries, a/k/a Clemco-Clementina Limited were negligent proximately causing plaintiff's injuries and disability, in the following particulars, among others that will be shown at the time of trial, to wit:
(a) In defectively designing the hoods;
(b) In defectively manufacturing the hoods;
(c) In failing to warn potential users of the inherent dangers of the hoods;
(d) In failing to warn against the use of the hoods with silica abrasives;
(e) In failing to warn of the danger of contracting silicosis when using the hoods.
The insurance contract at issue provided coverage from August 1, 1960 until September 30, 1976, and the terms of the contract state:
1. COVERAGE A BODILY INJURY LIABILITY COVERAGE B PROPERTY DAMAGE LIABILITY
The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
Coverage A. bodily injury or
Coverage B. property damage
to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.
"occurrence" means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured;
"bodily injury" means bodily injury, sickness or disease sustained by any person.
Appellant urges the court to interpret the contract to require "manifestation of the injury" during the term of the policy as opposed to the "exposure" theory, and they argue that to do so would exclude coverage as plaintiff's petition alleges that the injury did not manifest itself until 1981. According to the arguments by the parties, this determination is necessary to the resolution of the correctness of the summary judgment. Both parties cite jurisprudence from the federal courts as the Louisiana cases do not address the issue specifically under these facts. However, in our opinion, we do not find it necessary to explore the manifestation vs. exposure theories of contract interpretation propounded at this time as the duty to defend rule decides the matter in appellee's favor.
As stated by the Louisiana Supreme Court, the duty to defend is triggered by the allegations in plaintiff's petition. Cute-Togs, supra. In Cute-Togs, the petition alleged facts giving rise to breach of contract between plaintiff Cute-Togs and defendant Blue Cross. Blue Cross's liability insurer was not held to a duty to defend because the breach of contract was a clearly excluded occurrence.
In reference to the arguments on the duty to defend rule, appellant cites Young Oil Co. of Louisiana, Inc. v. Durbin, 412 So.2d 620 (La.App. 2d Cir.1982); Aetna Insurance Co. v. Grady White Boats, Inc., 432 So.2d 1082 (La.App. 3d Cir.1983); White v. Robinson, 367 So.2d 1358 (La. App. 4th Cir.1979); Blue Ridge Insurance Company v. Newman, 423 So.2d 1 (La. App. 1st Cir.1982)[2]; Jackson v. Lajaunie, 270 So.2d 859 (La.1972).
In Jackson, supra, after a trial on the merits, the third-party defendant homeowner insurer was dismissed because the facts of the petition alleged an accidental shooting *1331 at a gas station and the policy specifically excluded acts connected with the gas station. The policy in Aetna Ins. Co. v. Grady White Boats, Inc., supra, excluded damage to the named insured's products, and there plaintiff's petition alleged damage to one of his products (a vessel). As the policy in question excluded such damage, the insurance company had no duty to defend. In Young, supra, the petition alleged misappropriation which was a clearly excluded act in the policy at issue here. Finally, the policy in White v. Robinson, supra, clearly excluded coverage for an automobile leased by the insured to anyone other than a salesman for use on business of the insured.
In this case, the petition alleges that plaintiff utilized Clemco's product (a hood used in the sandblasting industry) for 20 years, a result of which use he contracted silicosis; that plaintiff did not become aware of the fact that he had the silica-related disease (silicosis) until after it was medically diagnosed in 1981. These allegations, in our opinion, do not unambiguously exclude coverage under the policy as written. Appellants assert to the contrary, on the basis that the illness was diagnosed in 1981. However, the policy does not require that the "bodily injury" or "disease" be diagnosed during the policy term, it requires that the injury or illness occur during the term of the policy. The question of whether an illness or injury occurs during the policy term is factual and not yet determined by a trial on the merits. Further, contrary to appellant's assertion, plaintiff's petition need not include facts indicating that the injury specifically arose during the period the policy was in effect. The duty to defend rule requires only that the facts alleged in the petition do not unambiguously exclude coverage. As we find that the allegations of the petition herein do not unambiguously exclude the fact of bodily injury occurring during 1970 to 1976, appellant is required to participate in appellee's defense regardless of the possible outcome.
Therefore, after a review of the record and evidence, we hereby affirm the summary judgment granted in favor of third-party plaintiff, Clemco Industries, and ordering third-party defendant, Commercial Union Insurance Company, to participate in Clemco's defense.
Appellant is to pay all costs of this appeal.
AFFIRMED.
NOTES
[1] This appeal arises from a suit in the trial court from which a separate appeal involving other parties was pending before this court. See 463 So.2d 1331. Thus, the appeals were consolidated.
[2] The Louisiana Supreme Court granted writs in Blue Ridge and is now pending. Thus the case will not be discussed. [427 So.2d 865 (La. 1983)].