611 So.2d 1377 (1993)
Frederick SMITH, Jr.
v.
Lyndon S. MATTHEWS, et al.
No. 92-C-0700.
Supreme Court of Louisiana.
January 19, 1993.
Rehearing Denied February 18, 1993.
Mack E. Barham, Robert Elton Arceneaux, Lee Ann Archer, Suzanne Brown Bagert, *1378 Barham & Arceneaux, New Orleans, John Joseph Jackson, III, Jackson & Stovall, Metairie, for applicant.
James F. Ryan, John Joseph McGuckin, Donovan & Lawler, Metairie, for respondent.
LEMMON, Justice.
The issue in this case is whether the landlord premises liability endorsement in the dwelling insurance policy issued by Lafayette Insurance Company provides coverage for the liability of Lyndon Matthews, a co-owner and an inhabitant of the insured dwelling who intentionally shot plaintiff in a confrontation over a personal debt.
Lyndon Matthews' father, Charles Matthews, bought the pertinent dwelling in 1978 and procured dwelling insurance in accordance with the requirements of the mortgagee. Charles Matthews paid to the mortgagee the monthly mortgage payments which included a prorated insurance premium, and the mortgagee paid the annual premium to the insurer.
Charles Matthews died in 1984, and Lyndon Matthews was appointed as executor of the estate. The judgment of possession, rendered in 1984, recognized Lyndon Matthews and his two siblings as the owners of the pertinent immovable property, the father having been judicially separated at the time of his acquisition of the property.
On September 27, 1986, Lafayette issued a dwelling policy, at the request of Lyndon Matthews, insuring the pertinent property and listing the named insured as "Matthews Charles Est." This policy replaced the policy obtained by Charles Matthews which expired on the same date. Lyndon Matthews, who lived in the dwelling on the property, paid the monthly mortgage payments which included the insurance premium. Lafayette renewed the policy in 1987 with "Matthews Charles Est." again listed as the named insured.
The Landlord Premises Liability Endorsement in the Lafayette policy provided premises liability coverage which obligated Lafayette to pay, up to its limits of liability, the damages for which the insured is legally liable when "a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage to which this coverage applies." (emphasis added.)[1] The endorsement defined "insured" as:
a. An individual shown in the declarations as a named insured or the husband or wife of such an insured, but only with respect to the insured premises.

b. A member of a partnership or joint venture which is a named insured; but you are an insured only with respect to your liability as such and only with respect to the insured premises.

c. An executive officer, director or stockholder of an organization that is a named insured; but you are an insured only with respect to your duties as such and only with respect to the insured premises.

d. A person (other than an employee of the named insured) or organization while acting as a real estate manager for a named insured. (emphasis added.)
On December 21, 1987, plaintiff went to the insured dwelling to collect a personal debt owed by Lyndon Matthews. As a result of the ensuing confrontation, Matthews shot plaintiff several times.
Plaintiff filed this action against Matthews and Lafayette, seeking to hold Lafayette liable for Matthews' tort under the premises liability endorsement in the dwelling policy. Lafayette denied coverage for the shooting incident on the basis (1) that Lyndon Matthews was not an insured under *1379 the premises liability coverage and (2) that the incident did not relate to the condition or use of the building.
The trial court granted Lafayette's motion for summary judgment, dismissing plaintiff's action as to Lafayette. The court of appeal affirmed, holding that the injury "did not grow out of a defect, condition or use of the insured premises," but resulted from a personal dispute unrelated to the premises. 592 So.2d 427, 428. Concluding that the policy was intended to provide coverage for liability for injuries arising out of a condition, defect or use of the insured premises, the court observed that "[t]he only connection with the premises is that the act occurred on the insured property." Id.
This court granted certiorari to review the decision of the lower courts. 599 So.2d 318.
An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written. Central Louisiana Electric Co. v. Westinghouse, 579 So.2d 981 (La.1991). However, any ambiguous provisions in an insurance contract must be construed in favor of coverage to the insured and against the insurer who issued the policy. Breland v. Schilling, 550 So.2d 609 (La.1989).
The Dwelling Policy in this case provided coverage to the insured for loss resulting from property damage caused by fire, lightning and other perils. The Landlord Premises Liability Endorsement provided additional coverage for premises liability to "any insured" who was legally liable for a claim for damages because of bodily injury "to which this coverage applies." The policy, as plaintiff correctly argues, did not by its terms restrict the applicability of the liability coverage to bodily injury which arises out of a defect or hazardous condition on the premises or out of the insured's use of the premises. However, the policy did restrict liability coverage to an "insured," as defined under that coverage in the policy, and further provided that liability coverage to such an insured was "only with respect to the insured premises."
Lyndon Matthews was effectively a named insured under the policy. There was no entity listed as the named insured, inasmuch as "Matthews Charles Est." was a non-entity. Compare State of Louisiana, Department of Transportation and Development v. Estate of Davis, 572 So.2d 39 (La.1990). Lyndon Matthews purchased this insurance for his own benefit (and perhaps for the benefit of his siblings), and he paid the premiums. Lafayette's agent knew that Lyndon Matthews was the co-owner of the insured premises who was to benefit from the policy coverages.[2] Indeed, Lafayette's agent knew that Charles Matthews was dead, that his estate was not the proper named insured and that someone other than the designated "named insured" was to be the covered person. If Lyndon Matthews, the co-owner and occupant, had been designated as the named insured instead of a non-entity, that designation apparently would have made no difference to Lafayette as to premiums or policy terms and conditions. Under such circumstances the insurer may not invoke the designation of the estate (rather than the succession representative/heir) as the named insured to defeat the heir's rights under the policy. See 5A John A. Appleman & Jean Appleman, Insurance Law and Practice § 3338 (1970). The parties clearly intended for Lyndon Matthews to be the named insured (or one of the named insureds), and the policy must be reformed to conform with the clear intent of the parties. Richard v. United States Fidelity & Guaranty Co., 247 La. 943, 175 So.2d 277 (1965); Lawhorn v. State Farm Insurance *1380 Cos., 560 So.2d 619 (La. 4th Cir.1990); Taylor v. Audubon Insurance Co., 357 So.2d 912 (La.App. 4th Cir.1978); Diaz v. Cherokee Insurance Co., 275 So.2d 922 (La.App. 4th Cir.1973); 15 William S. McKenzie & H. Alston Johnson, Louisiana Civil Law Treatise, Insurance Law and Practice § 5 (1986). Unless Matthews is recognized as the named insured, the policy had no named insured. Such a result is untenable, especially in view of the clear intent of the parties in entering into the insurance contract. We therefore conclude that Lyndon Matthews was a named insured under the policy.
The liability coverage provided to Matthews as a named insured under the premises liability endorsement was expressly applicable "only with respect to the insured premises." This case therefore turns on the interpretation of the quoted phrase. Lafayette contends that the phrase limits liability coverage to injuries causally related to the premises, such as injuries resulting from a defect in the steps or a negligently maintained floor covering. On the other hand, plaintiff contends that the phrase limits liability coverage to injury-causing acts of the insured occurring on or connected with the insured premises, as contrasted to other places. Plaintiff argues that the limitation at least can be reasonably interpreted in that manner and invokes the maxim that a coverage provision in an insurance policy which can be reasonably interpreted in two ways must be construed in the way most favorable to coverage.
The phrase "with respect to" generally means "with reference to", "relating to", or "pertaining to." 46 Words and Phrases, "With Respect to", 202 (1970). The policy therefore provided Matthews with liability coverage only for activities with reference to or relating or pertaining to the insured premises.
In Jackson v. Lajaunie, 270 So.2d 859 (La.1973), this court considered a similar phrase, "in connection with," in the context of a homeowner's policy insuring payment of "damages because of bodily injury," but excluding applicability of coverage to "any act or omission in connection with premises, other than [the insured premises]," which are "owned, rented or controlled by any insured." The insured, a service station owner negligently shot a customer with a pistol in the course of a practical joke at the station. The customer sued the owner's homeowner's insurer. This court applied the quoted exclusion, reasoning that "in connection with" is broader terminology than "arising out of". The court declined to limit the exclusion to injuries caused by defects on the premises, noting that the policy language did not limit the exclusion to injury incurred because of the condition of the premises. The court observed that the injury-causing act was "linked to the station, associated with the station, related to the station and, in the absence of a new and restrictive definition of an old and well understood word, connected with the station." Id. at 864.
The Jackson case involved interpretation of an exclusion from coverage which generally is construed narrowly against exclusion. The present case involves interpretation of a coverage provision which generally is construed liberally in favor of coverage.
Nowhere in the Lafayette policy is the liability coverage restricted to injuries arising out of the insured premises or caused by a condition, defect or use of the insured premises.[3] The broader terminology providing coverage "with respect to" *1381 the insured premises does not necessarily limit coverage to injuries caused by premises defects or arising out of the use of the premises, but only requires some connection with or relation to the insured premises as opposed to any other location.
In the present case the injury occurred on the insured premises. The tort victim was at the insured premises because the insured lived there, and both parties were present on the premises when the injury occurred. The gun which produced the injury was kept by the insured on the insured premises, apparently for the protection of the premises and of the insured while he was there. Although the injury did not arise out of the use of the premises and was not caused by a premises defect, the injury was broadly related to the premises. The coverage, therefore, can reasonably be construed under the circumstances as applicable "with respect to" the insured premises, as contrasted to acts of the insured occurring on or with respect to locations away from the insured premises.
Accordingly, the judgments of the lower courts are reversed, the motion for summary judgment is denied, and the case is remanded to the district court for further proceedings.
COLE, J., respectfully dissents and would affirm for reasons assigned by the Court of Appeal.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice, dissenting.
I accept the majority's finding that defendant is a named insured under the policy. However, since the insured was covered "only with respect to the insured premises," I am unable to say that the shooting incident in which plaintiff was injured falls within this coverage. The clear intent behind this provision was to provide coverage for liability for injuries arising out of a condition, defect or use of the insured premises. By its very nature, such a provision excludes coverage for intentional acts by the insured which have no connection with the insured property other than simply occurring on the property. Accordingly, I would affirm the judgment of the trial court granting summary judgment in favor of the insurer.
NOTES
[1] The liability coverage language in Lafayette's policy is virtually identical to that in a standard homeowner's policy. See 1 George J. Couch, Cyclopedia of Insurance Law § 1:61 (2d ed. 1984). However, the Lafayette policy did not contain an intentional act exclusion which is usually found in homeowner's policies. Moreover, the restricted definition of "insured" sets off Lafayette's policy from a typical homeowner's policy.
[2] The agent admittedly knew Matthews for six years and also knew his occupation and marital status.
[3] The personal liability coverage of a typical homeowner's policy generally covers the insured's liability for injuries occurring on the insured premises, whether or not the injury arises out of the premises. See Breland v. Schilling, 550 So.2d 609 (La.1989). However, such a policy typically excludes activities such as business pursuits, professional services and use of motor vehicles, and further excludes injuries arising out of any premises owned or rented by an insured which is not an insured location. See George J. Couch, supra, at 164. The latter exclusion, which is apparently designed to require an insured to cover specifically all owned or rented premises, is the type of language by which Lafayette might have accomplished the position for which it now argues.