611 So.2d 158 (1992)
Lester DUHON, et al. Plaintiffs,
v.
NITROGEN PUMPING & COILED TUBING SPECIALISTS, INC. Defendant Third-Party PlaintiffAppellee, and
Seamus Iain Cowley and Leslie Wilton, et al. DefendantsThird-Party DefendantsAppellants.
No. 91-560.
Court of Appeal of Louisiana, Third Circuit.
December 14, 1992.
Rehearing Denied January 21, 1993.
*159 Kent Mercier, Anthony Fazzio, Carl Duhon, Lafayette, for plaintiff-appellee.
Phelps Dunbar, H. Alston Johnson, Baton Rouge, Phelps Dunbar, Richard N. Dicharry, J. Clifton Hall, III, New Orleans, for defendants-appellants Cowley and Wilton.
Oats & Hudson, Wm. M. Hudson, Patrick B. McIntire, Charley Hutchens, Lafayette, Guy E. Matthews, Houston, Tex., for defendant-appellee NPACT.
Before STOKER and KNOLL, JJ., and BERNARD N. MARCANTEL[*], J. Pro Tem.
KNOLL, Judge.
The sole issue on appeal concerns the duty to defend: whether the trial court erred in its determination that third-party defendants, Seamus Iain Cowley and Leslie Wilton as representatives of certain underwriters at Lloyd's, London and those London companies (hereafter Lloyd's) subscribing to policies issued to Nitrogen Pumping and Coiled Tubing Specialists, Inc. (NPACT), had an obligation to defend their insured, NPACT, against damage claims raised by fifteen landowners whose properties abut NPACT's.
In February 1990 various neighbors of NPACT sued NPACT for compensatory and punitive damages, alleging, among other things, that NPACT "improperly received, stored, transported, and disposed of certain toxic and hazardous substances at THE N.P.A.C.T. YARD."
NPACT answered the petition for damages and filed a third-party demand against Lloyd's seeking judgment ordering Lloyd's to defend NPACT and to indemnify it against any judgment plaintiffs might obtain.
After submitting the policies of insurance into evidence, both NPACT and Lloyd's moved for summary judgment on the question of the duty to defend. The trial court found that Lloyd's had a duty to defend, stating that plaintiffs' petition did not unambiguously exclude coverage. We affirm.
Lloyd's argues on appeal that the damages alleged in the plaintiffs' petition are either unambiguously excluded under the policies' general pollution provisions or the policies' supplemental exclusion clauses pertaining to waste disposal operations or they are not covered under the policies' special seepage and pollution endorsement. Because we find coverage under the special *160 endorsement, we pretermit discussion of the policies' exclusionary clauses which pertain to waste disposal operations.
The cornerstone pronouncement of the "duty to defend" rule is found in American Home Assurance Company v. Czarniecki, 255 La. 251, 230 So.2d 253 (1969), where the Louisiana Supreme Court stated at 259, 230 So.2d 253:
"[T]he insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage.
Thus, if, assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. Additionally, the allegations of the petition are liberally interpreted in determining whether they set forth grounds which bring the claims within the scope of the insurer's duty to defend the suit brought against its insured."
On the other hand, if it is clear that the allegations of plaintiff's petition refer only to acts or omissions that are excluded from coverage under the terms of the policy, then the insurer owes no duty to defend. Bourque v. Lehmann Lathe, Inc., 476 So.2d 1129 (La.App. 3rd Cir.1985), writ denied, 479 So.2d 362 (La.1985). It is also now well accepted that an insurer's duty to defend its insured is of greater scope than the insurer's duty to pay damages. Smith v. Insurance Co. of State of Pennsylvania, 161 So.2d 903 (La.App. 1st Cir.1964), writ refused, 246 La. 344, 164 So.2d 350 (La.1964); American Home Assurance Company, supra.
In the present case, although the policies of insurance contained not only a general pollution damages exclusion, but also a supplemental exclusion pertaining to waste disposal operations, the policies further carried a later added endorsement which included special coverage for seepage and pollution, providing as follows:
"Notwithstanding the absolute Seepage and Pollution Exclusion contained in this Policy, it is hereby understood and agreed that this policy will apply to: 1) personal injury or bodily injury or loss of, damage to or loss of use of property directly or indirectly caused by seepage and/or pollution and/or contamination of air and/or land and/or water.
* * * * * *
provided that all of the following conditions have been met:
A) The occurrence was accidental and was neither expected nor intended by the Assured. An accident shall not be considered unintended or unexpected unless caused by some intervening event neither foreseeable nor intended by the Assured;
B) The occurrence can be identified as commencing at a specific time and date during the term of this policy;
C) The occurrence became known to the Assured within 14 days of its commencement;
D) The occurrence was reported in writing to these Underwriters within 60 days after having become known to the Assured;
E) The occurrence did not result from the Assured's intentional and willful violation of any government statute, rule or regulation."
Lloyd's argues that the special seepage and pollution endorsement was inapplicable because none of the allegations of plaintiffs' petition evidence that the conditions of coverage were met. NPACT contends just the opposite.
The first requirement of the endorsement is the qualification that the seepage and pollution must have been the result of an occurrence that was "accidental and was neither expected nor intended by the Assured." As detailed in the endorsement, an accident is not considered unintended or unexpected unless it was caused by some intervening event that was neither foreseeable nor intended by the Assured.
It is well settled that the allegations of fact, and not conclusions, contained in the petition determine the obligation to *161 defend. Jackson v. Lajaunie, 264 La. 181, 270 So.2d 859 (1972). Even though the plaintiffs' petition may allege numerous claims for which coverage is excluded under the policy, the duty to defend may nonetheless exist if there is at least a single allegation in plaintiff's petition under which coverage is not unambiguously excluded. Applewhite v. City of Baton Rouge, 380 So.2d 119 (La.App. 1st Cir. 1979).
Without detailed elaboration, we find that at least paragraph six of plaintiffs' petition meets the accidental requirement. Paragraph six states, in pertinent part, that "the Defendants, individually and through their employees or servants, improperly received, stored, transported, and disposed of certain toxic and hazardous substances at THE N.P.A.C.T. YARD." This allegation, even if taken alone, does not unambiguously exclude the possibility that NPACT'S actions at its facility on Doc Duhon Road were accidental. Likewise, the requirement that the seepage and/or pollution was caused by an intervening event is met. Paragraph eight of the petition provides:
"The actions and inactions of the Defendants at THE N.P.A.C.T. YARD caused the contamination of the area and leakage of hazardous and toxic substances from THE N.P.A.C.T. YARD into the natural drainage of the area. The hazardous and toxic substances handled at THE N.P.A.C.T. YARD have, leaked and/or will in the future leak into and contaminate the water wells of residents in the area."
We find the broad allegations of plaintiffs' petition do not unambiguously exclude coverage. This is a broad standard to be liberally applied to the allegations of plaintiffs' petition. We find the arguments advanced by able counsel for Lloyd's go beyond the mere allegations of plaintiffs' petition and more properly address the evidence that may or may not be introduced at trial. We do not consider the evidence of allegations in determining a duty to defend; the allegations may be proven otherwise at trial. The duty to defend rule requires only that the facts alleged in plaintiffs' petition do not unambiguously exclude coverage. Armstrong v. Land & Marine Applicators, 463 So.2d 1331 (La.App. 5th Cir. 1984), writ denied, 466 So.2d 1299 (La. 1985). See also Employers Commercial Union Ins. Co. v. Bertrand, 306 So.2d 426 (La.App. 3rd Cir.1975) which concerns allegations in plaintiff's petition, which, if true would have excluded coverage.
Lloyd's next contention is that plaintiffs' petition does not specify that the occurrence can be identified as commencing at a specific time and date during the term of NPACT's policy. The insurance policies applicable herein covered the periods October 31, 1988 to October 31, 1989, and October 31, 1989 to October 31, 1990. Lloyd's argues that plaintiffs' petition describes an ongoing occurrence which began in the early 1980s, a date which is unambiguously before the relevant policy periods. We disagree.
As defined in NPACT's policy, occurrence is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."
Plaintiffs' petition states:
"In the early 1980s and continuing through to the present, the Defendants, individually and through their employees or servants, improperly received, stored, transported, and disposed of certain toxic and hazardous substances at THE N.P.A.C.T. YARD."
From a common sense reading of the plaintiffs' petition, we cannot say that the allegations unambiguously rest on an occurrence which began before the policy period. Plaintiffs' petition generally alleges a period of time when acts of liability took place. However, no particular accident is detailed, and no specific allegation is made that the plaintiffs were repeatedly exposed to the same harmful condition prior to the effective date of Lloyd's policies. Accordingly, the petition does not pinpoint an occurrence which unambiguously establishes that coverage was not yet in effect. In reaching this conclusion, we feel it necessary to emphasize that Lloyd's objections rise at a purely allegational stage of the proceedings. Until there is a trial on the *162 merits, the factual question of when the occurrence began will not be determined. Accordingly, because plaintiffs' petition does not unambiguously exclude that the occurrence began during the policy period, Lloyd's must defend NPACT since the date of the occurrence will not be judicially determined until evidence of this issue is adduced at trial.
Lloyd's next contends that the seepage and pollution endorsement is not applicable because plaintiffs' petition alleges that their damages were the result of NPACT's intentional and willful violation of governmental statutes, rules or regulations.
In particular, Lloyd's focuses on several allegations in plaintiffs' petition which address NPACT's intentional and willful violation of governmental regulations. Notwithstanding the correctness of Lloyd's assertions, we again point out that as shown above, plaintiffs have also claimed in their petition that NPACT was negligent or strictly liable; under either instance, neither NPACT's intent nor the violation of governmental rules constitutes a requisite to plaintiffs' cause of action. Therefore, in this instance also, we find that plaintiffs' petition does not unambiguously exclude coverage.
Lastly, two arguments surfaced at oral argument for the first time that we feel are deserving of comment.
Lloyd's argued that even if the special seepage and pollution endorsement conditions were met, it owed no duty to defend NPACT because the endorsement contained the following exclusion:
"Nothing contained in this endorsement shall operate to provide any coverage hereon with respect to:
* * * * * *
(C) any site or location used in whole or in part for the handling, processing, treatment, storage, disposal or dumping of any waste materials or substances;..."
After reviewing this special endorsement exclusion, we hasten to point out that the special exclusion relied upon by Lloyd's refers to "waste materials or substances." After referring to plaintiffs' petition, we find that although reference is made to toxic and hazardous substances, the allegations do not refer to waste or waste substances. Therefore we conclude that the waste site exclusion is inapplicable, and Lloyd's cannot rely upon it for relief from its duty to defend NPACT.
The second argument addressed the question regarding the insurance policy's coverage for any vicarious liability to which NPACT was exposed. In their petition, the plaintiffs not only made NPACT a defendant, but also named James R. Crawford, NPACT's president, and Jaime Crawford, NPACT's vice-president, defendants, alleging that they were involved in tortious activity as agents of NPACT.
NPACT, relying on Lamkin v. Brooks, 498 So.2d 1068 (La.1986), and Lowe & Sons v. Great American Surplus, 572 So.2d 206 (La.App. 1st Cir.1990), asserted that, in addition to the earlier differentiation discussed hereinabove, conditions "A" and "E" of the pollution endorsement, the two conditions which involve NPACT's intent, were restricted to NPACT's intentional acts, not those of NPACT's officers who were named as co-defendants. Since the Crawfords were not named insureds under the policy, NPACT contends that Lloyd's owed a duty to defend NPACT, the named insured, against the allegations that it was vicariously liable for the intentional acts of its agents, the Crawfords.
To the contrary, Lloyd's relies on the case of Huey T. Littleton Claims v. Employers Reinsurance, 933 F.2d 337 (5th Cir.1991). Lloyd's contends that NPACT's argument was rejected in Littleton.
We find the Littleton case distinguishable. First, Littleton's holding must be viewed in light of its procedural settingit arose on a coverage issue sought through a petition for declaratory judgment. As pointed out earlier in this opinion, the question of an insurer's duty to defend is viewed in a broader scope than that utilized to determine whether the insurer is liable for the alleged damages. Secondly, the exclusionary language at issue in Littleton *163 did not limit the tortfeasor to the insured corporate entity. In the case sub judice, the language of the condition applicable herein was restricted to NPACT's intentional acts.
We agree with NPACT's appreciation of the Lamkin case. In its holding, the Louisiana Supreme Court clearly indicated that the police officer for the town of Lecompte was an insured under the town's liability policy, and therefore fell under the policy's intentional conduct exclusion. Following like thinking, the panel in Lowe, supra, drew a similar distinction, finding under the policy language before it that only the employer's intentional tort was excluded; accordingly, it concluded that the insurer had a duty to defend for the intentional acts of the employees of its insured. Under this line of jurisprudence, it is clear that Lloyd's owes NPACT a duty to defend it from the acts of its agents as alleged in plaintiffs' petition.
For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are assessed to Lloyd's.
AFFIRMED.
STOKER, J., dissents and assigns reasons.
STOKER, Judge, dissenting.
With respect I dissent from the holding of the majority in this case.
The trial court found that Lloyd's owed a duty to defend Nitrogen Pumping & Coiled Tubing Specialists, Inc. (NPACT) but specifically reserved to Lloyd's the right to contest coverage in the event NPACT should be cast in judgment. The trial court erred in this approach, for as the majority points out, there must be coverage before there can be a duty to defend. However, the majority avoids the error by going to the heart of the matter: the question of whether coverage under the insurance contract existed relative to the facts alleged in the petition. The majority finds coverage under the contract endorsement which provided special coverage for seepage and pollution. I disagree with the majority's interpretation and application of this contract feature.
As briefed and argued in this court, the parties discuss several provisions of the insuring agreements in the several contracts as to whether they do or do not provide coverage. I find that none of the provisions provide coverage. The majority finds coverage under the one provision mentioned above, and, for that reason, pretermits discussion of the other provisions. Accordingly, this dissent will address only the majority's one basis for finding coverage. However, before doing so, I will submit that there can be no doubt but that the general exclusion clauses of the policies and the supplemental exclusion clauses exclude coverage for any damage in any way caused by or related to pollutants.
In recognition of the absolute exclusion of coverage for seepage and pollution damages, Lloyd's sought to extend a limited coverage. The limitations are very specific. The following is the language extending and limiting such coverage:
"SEEPAGE AND POLLUTION ENDORSEMENT"
"(I) Onshore Operations

Notwithstanding the absolute Seepage and Pollution Exclusion contained in this Policy, it is hereby understood and agreed that this policy will apply to:
1) personal injury or bodily injury or loss of, damage to or loss of use of property directly or indirectly caused by seepage and/or pollution and/or contamination of air and/or land and/or water.
2) the cost of evaluating and/or monitoring and/or removing and/or nullifying and/or cleaning-up seeping and/or polluting and/or contaminating substances.
provided that all of the following conditions have been met:
A) The occurrence was accidental and was neither expected nor intended by the Assured. An accident shall not be considered unintended or unexpected unless caused by some intervening *164 event neither foreseeable nor intended by the Assured;
B) The occurrence can be identified as commencing at a specific time and date during the term of this policy;
C) The occurrence became known to the Assured within 14 days of its commencement;
D) The occurrence was reported in writing to these Underwriters within 60 days after having become known to the Assured;
E) The occurrence did not result from the Assured's intentional and willful violation of any government statute, rule or regulation;"
* * * * * *
Because all of the "conditions" listed must be met in order for the coverage to be found under the seepage and pollution endorsement, failure to meet any of them will result in no coverage being afforded.
Plaintiffs allege in their petition that NPACT was guilty of knowing, intentional conduct which was illegal, being in violation of statutes, rules and regulations. This is exactly the kind of conduct which the endorsement in question specified would not be covered. The petition alleged ad nauseam that damages allegedly suffered were the result of acts or failure to act of which NPACT had full knowledge and of which it had and full awareness of the consequences. The petition further alleges that such acts (conduct) or omissions were in violation of governmental statutes, rules or regulations.
Clearly, the allegations of the petition show that no coverage is available to NPACT under the special endorsement providing limited coverage for seepage and pollution. In opposition to the postulate NPACT urges, and the majority appears to hold, that NPACT may be held liable under theories of recovery such as strict liability, independent negligence or vicarious liability. On this point NPACT and the majority in this case rely on Lamkin v. Brooks, 498 So.2d 1068 (La.1986) and Lowe & Sons, Inc. v. Great American Surplus Lines Ins. Co., 572 So.2d 206 (La.App. 1st Cir.1990). Plaintiffs sued the president and vice-president of NPACT as employees, and the contention is that NPACT could be liable vicariously because of the tortious acts of these employees. In this regard, however, and as with the other theories of recovery, the plaintiffs focus on general conclusory statements not based on pleaded facts.
The facts pleaded clearly show that the damages alleged to have occurred did not result from an occurrence or occurrences which were accidental. They were not unexpected and were foreseeable. Obviously, therefore, condition A of the seepage and pollution endorsement has not been met. Moreover, plaintiffs' allegations that the conduct complained of which caused their damages were in violation of law means that condition E has not been met. The result is that plaintiffs have pleaded themselves outside of the coverage provided by Lloyd's policies.
To me it seems clear what the parties intended. When Lloyd's sold and NPACT purchased limited coverage for seepage and pollution through the endorsement, both intended there would be no coverage for any damage creating occurrence which was not accidental, was intended by the insured or was not unexpected by the insured. The allegations of facts set forth in the petition negative the possibility that the facts constituting the alleged damages causing conduct could have been accidental or were not expected or intended. Expected or intended means foreseeable. If an insured may avoid the consequences of its own pleading of facts by making general conclusory allegations setting forth theories of recovery, then there would be no need to state exclusions or conditions in the first place. Besides, a theory of recovery ultimately must rest upon the facts, and the facts may support recovery under negligence (independent or through respondeat superior) or strict liability. In summary, pleading a theory of recovery does not change or affect the pleaded facts, and if the insurance contract conditions coverage on facts (as is the case here), the facts govern and not the theory of recovery asserted. The intentions of the parties should govern.
*165 With further reference to intent, we should look at the language of the seepage and pollution endorsement which immediately follows the portion of the endorsement quoted above. The language is as follows:
"Nothing contained in this endorsement shall operate to provide any coverage hereon with respect to:
* * * * * *
(D) any site or location used in whole or in part for the handling, processing, treatment, storage, disposal or dumping of any waste materials or substances;"
In my opinion this limiting provision renders inapplicable Lowe & Sons and Lamkin. Those cases are relied upon for the contention that Lloyd's must provide a defense to NPACT for any vicarious liability for which it may be responsible. The policies here are distinguishable from those in Lowe & Sons and Lamkin. The holdings in Lowe & Sons and Lamkin were tied to policy language geared to particular insurers. Lloyd's policies are geared to particular risks. This being so, the legal theory on which the plaintiffs rely is immaterial. This distinction was made in Huey T. Littleton Claims, Inc. v. Employers Reinsurance Corp., 933 F.2d 337 (5th Cir.1991). Littleton mentions Lamkin and makes it clear that if an employee commits an act or omission for which the employer is vicariously liable, but which falls squarely within an exclusionary clause, there is no coverage. Littleton holds this is so irrespective of the legal theory which is asserted against the insured, whether it be vicarious tort liability, independent tort liability, or even contractual liability.
The majority opinion mentions Littleton, but does not really answer it.
For the reasons given above, I would reverse the trial court's ruling and hold that Lloyd's has no duty to defend NPACT because the allegations of fact in the petition do not bring the conduct alleged within coverage of the Lloyd's policies.
NOTES
[*] Judge Bernard N. Marcantel, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.