# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-1088


**RHONDA B. HICKEY, ET AL.**

**VERSUS**

**ALLSTATE INS. CO., ET AL.**



**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 235,775
HONORABLE MARY LAUVE DOGGETT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JOHN E. CONERY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Marc T. Amy, John E. Conery, and David Kent Savoie, Judges.



**REVERSED AND RENDERED.**

**L. Lyle Parker**
**Christina S. Slay**
**Bolen, Parker, Brenner, Lee & Engelsman, LTD.**
**Post Office Box 11590**
**Alexandria, Louisiana 71315-1590**
**(318) 445-8236**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Allstate Ins. Co.**

**John P. Wolff, III**
**Chad A. Sullivan**
**Virginia J. McLin**
**Mark T. Assad**
**Keogh, Cox & Wilson, LTD.**
**Post Ofice Box 1151**
**Baton Rouge, Louisiana 70821**
**(225) 383-3796**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**Federal Insurance Company**
**Express Courier International, Inc.**

**CONERY, Judge.**

The underlying suit filed on behalf of Rhonda B. Hickey, Edward W. Hickey, and Barbara J. Hickey (Hickeys) has settled.[1] The only remaining issue and the subject of this appeal involves cross-motions for partial summary judgment, wherein the trial court found that Allstate Insurance Co. (Allstate) owed a duty to defend Express Courier International, Inc. (Express) for claims which resulted from the accident between the Hickeys and Allstate's insured, Alton G. Croom.[2] For the following reasons, we reverse and render.

## FACTS AND PROCEDURAL HISTORY

An automobile accident occurred on February 9, 2009, in Pineville, Louisiana, wherein now deceased defendant, Mr. Croom, crossed the center line while driving a Honda CRV and collided with the Hickeys' vehicle. Allstate, as Mr. Croom's insurer, provided Mr. Croom's estate with a defense and ultimately entered into a settlement with the Hickeys.

During the discovery process, the Hickeys filed a "Fourth Amended and Restated Petition" (Fourth Amended Petition) and alleged that Mr. Croom was operating a vehicle in the course and scope of his employment with Express, and that Mr. Croom's vehicle, the Honda CRV, was leased to Express and insured under a "Hired and Non-Owned" endorsement issued to Express by Federal Insurance Company (Federal) in accordance with 49 U.S.C. § 14102 and 49 C.F.R. § 376.12. Scottsdale Insurance Company provided excess coverage for Express. The Fourth Amended Petition also alleged that the Federal endorsement provided

---

[1] The Hickeys have settled their case with all defendants which include Mr. Croom and his Estate, Allstate, Express, Federal, and Scottsdale Insurance Company, excess insurance carrier for Express.

[2] After Mr. Croom passed away as a result of the injuries he received in the accident, the Estate of Alton G. Croom was substituted as a defendant.

liability coverage to Mr. Croom and Express and that Express "back-charged" Mr. Croom for the endorsement premiums. Allstate was not named as the insurer of Express in the Hickeys' Fourth Amended Petition.

Based on the Hickeys' allegations in the Fourth Amended Petition, Express and Federal filed a cross-claim against Allstate claiming that under the terms of the Allstate policy, Allstate owed Express a duty to defend against the Hickeys' claims.

Express and Federal then filed a motion for partial summary judgment claiming that Allstate owed Express a duty to defend against the allegations in the Fourth Amended Petition. Allstate refused to accept the defense of Express. Federal, as Express' primary insurer, claimed that it was entitled to reimbursement from Allstate for the costs incurred in defending Express. Allstate filed a competing cross-motion for partial summary judgment claiming that the terms of the Allstate policy specifically excluded any duty by Allstate to defend Express for the claims made by the Hickeys in their Fourth Amended Petition.

At a hearing held on February 10, 2014, the trial court admitted three documents into evidence for consideration in connection with the cross-motions for partial summary judgment, the Allstate insurance policy issued to Mr. Croom, the Hickeys' original petition, and the Hickeys' Fourth Amended Petition.

The trial court denied the request by Express to admit into evidence the Independent Contractor Agreement (Agreement) between Express and Mr. Croom. The trial court found the Agreement was "irrelevant and inadmissible" on the issue of Allstate's duty to defend Express. The trial court allowed counsel to submit "legal memorandum on the evidentiary issue," but maintained its original decision not to admit the Agreement into evidence.

2

During the period allowed by the trial court for legal briefing, Express also offered additional evidence for inclusion into the record before the trial court. Express sought the admission of the Hickeys' first, second, and third petitions filed in the case. Allstate objected and the trial court denied their admission into the record, and found that although the record was left open for additional briefing, it was not left open for the submission of additional evidence. No answer to the appeal was filed on behalf of Express and Federal claiming error on these two evidentiary rulings by the trial court.

In reasons for ruling, dated April 4, 2014, the trial court granted the motion for partial summary judgment filed on behalf of Express and Federal and denied the cross-motion for summary judgment filed on behalf of Allstate. Judgment was signed by the trial court on May 12, 2014, wherein the trial court granted Express and Federal's motion for partial summary judgment ordering Allstate to pay expenses incurred by Federal in its defense of Express. Allstate then timely filed a writ application challenging the trial court's ruling.

The Allstate writ application was denied by this court on the basis of La.Code Civ.P art. 1915(B), which requires that a trial court designate as a final appealable judgment any judgment granting a motion for partial summary judgment. The trial court signed an amended judgment on June 10, 2014, designating the judgment in this matter as final and appealable. It is from the June 10, 2014 judgment that Allstate has timely appealed.

## ASSIGNMENTS OF ERROR

On appeal, the defendants assert the following as error:

A. The Trial Court erred in finding the plaintiffs' Fourth Amended and Restated Petition for Damages imposed a duty on Allstate to defend the named insured's employer, Express, despite the pleaded

3

facts indicating that the employer failed to meet the definition of a named insured under the Allstate policy.

B. The Trial Court erred in denying the Cross Motion for Partial Summary Judgment filed on behalf of Allstate, despite having found multiple paragraphs in the Fourth Amended Petition containing allegations that Express leased plaintiff's covered auto, which eliminated the Employer from meeting the definition of an insured under the Allstate policy.

C. The Trial Court erred in finding that, in instances where an organization must fit within a specific classification expressly provided in the policy in order to be covered, every paragraph of the petition must contain allegations that "unambiguously exclude" coverage in order to avoid owing a duty to defend the organization, notwithstanding expressly pleaded facts in various paragraphs of the petition which clearly indicate the organization does not meet the requirements of the covered classification.

D. The Trial Court erred in rigidly interpreting the pertinent case law, which led to a decision with absurd consequences i. e. requiring a personal automobile insurer to defend a named insured's employer where the facts pled indicated the employer hired the insured auto, outside the classification of an insured person under the policy.

E. The Trial Court erred in granting the Motion for Partial Summary Judgment filed on behalf of Express and Federal, finding that Allstate had a duty to defend Express based only upon allegations contained in paragraph 8 of plaintiffs' Fourth Amended and Restated Petition for Damages, despite the language in paragraphs 11 and 12, which unambiguously exclude coverage.

## LAW AND DISCUSSION

*Standard of Review*

Summary judgments are reviewed de novo, applying the same standard to the matter as that applied by the trial court. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730. Summary judgment is favored by law and provides a vehicle by which the just, speedy, and inexpensive determination of an action may be achieved. La.Code Civ.P. art. 966(A)(2). The trial court is required to render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for

4

purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B)(2). In this case, the trial court allowed into evidence the documentation necessary to determine Allstate's duty to defend Express against the claims made by the Hickeys.

***Duty to Defend***

In *Arceneaux v. Amstar Corp.*, 10-2329, p. 9 (La. 7/1/11), 66 So.3d 438, 450, the supreme court once again addressed the issue of an insurer's duty to defend its insured:

> As explained in *Yount v. Maisano,* 627 So.2d 148, 153 (La.1993), "the insurer's obligation to defend suits against its insured is broader than its liability for damage claims." "The insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiffs petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage." "Thus, if assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit." The allegations of the petition are liberally construed to determine whether they set forth grounds which bring the claim within the insurer's duty to defend.

(Other citations omitted.)

***Insurance Policy Interpretation***

In *Sims v. Mulhearn Funeral Home, Inc.*, 07-54, pp. 7-10 (La. 5/22/07), 956 So.2d 583, 588-90, the supreme court provided the analysis applicable to the interpretation of a contract of insurance:

> In analyzing insurance polices, certain elementary legal principles apply. First and foremost is the rule that an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. *LeBlanc v. Aysenne,* 05-0297, p. 3 (La.1/19/06), 921 So.2d 85, 89; *Edwards v. Daugherty,* 03-2103, p. 11 (La.10/1/04), 883 So.2d 932, 940; *Cadwallader v. Allstate Insurance Co.,* 02-1637, p. 3 (La.6/27/03), 848 So.2d 577, 580; *Louisiana Insurance Guaranty*

5

*Association v. Interstate Fire & Casualty Co.,* 93-0911, p. 5 (La.1/14/94), 630 So.2d 759, 763.

According to those rules, the responsibility of the judiciary in interpreting insurance contracts is to determine the parties' common intent. See, LSA-C.C. art. 2045; Edwards, 03-2103, p. 11, 883 So.2d at 940; Cadwallader, 02-1637 at 3, 848 So.2d at 580; Blackburn v. National Union Fire Insurance Co. of Pittsburgh, 00-2668, p. 6 (La.4/3/01), 784 So.2d 637, 641. Courts begin their analysis of the parties' common intent by examining the words of the insurance contract itself. See, LSA-C.C. art. 2046; Succession of Fannaly v. Lafayette Insurance Co., 01-1355, p. 3 (La.1/15/02), 805 So.2d 1134, 1137; Blackburn, 00-2668 at 6, 784 So.2d at 641 ("[T]he initial determination of the parties' intent is found in the insurance policy itself."). In ascertaining the common intent, words and phrases in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning. See, LSA-C.C. art. 2047; Edwards, 03-2103 at 11, 883 So.2d at 940-941; Cadwallader, 02-1637 at 3, 848 So.2d at 580; Succession of Fannaly, 01-1355 at 3, 805 So.2d at 1137.

The determination of whether a contract is clear or ambiguous is a question of law. *Edwards,* 03-2103 at 12-13, 883 So.2d at 941; *Cadwallader,* 02-1637 at 4, 848 So.2d at 580; *Louisiana Insurance Guaranty Association,* 93-0911 at 7, 630 So.2d at 764. Moreover, when a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate. *Robinson v. Heard,* 01-1697, p. 4 (La.2/26/02), 809 So.2d 943, 945; *Peterson,* 98-1712 at 5, 729 So.2d at 1029.

### *Allstate's Policy Provisions*

The policy provisions upon which Allstate relied to support their position that Express was not an insured person under the Allstate policy issued to Mr. Croom for his personal vehicle, are as follows:

**Part 1**
**Automobile Liability Insurance**
**Bodily Injury-Coverage AA**
**Property Damage-Coverage BB**

**We** will pay those damages which an insured person is legally obligated to pay because of:

6

    (1)    **Bodily injury**, sustained by any person, and
    (2)    Damage to, or destruction of, property.

Under these coverages, **your** policy protects an insured person from claims for accidents arising out of the ownership, maintenance or use, loading or unloading of an insured **auto**.

**We** will defend an insured person sued as the result of a covered **auto** accident, even if the suit is groundless, false or fraudulent. **We** will choose the counsel. **We** may settle any claim if **we** believe it is proper.

(Emphasis in original.)

The definition of who is an insured person under the policy issued by Allstate to Mr. Croom for coverage of his vehicles stated:

**Insured Persons**

    (1)    **you**,

    . . . .

(3)    Any other person or organization liable for the use of an Insured **auto if the auto is not** owned or hired by this person or organization provided the use is by an insured person under 1. or 2. above.

(Emphasis in original.)

The definition section of the Allstate policy at number six, provides the definition of "**You** or **Your,**" which "means the policyholder named on the Policy Declarations and that policyholder's **resident** spouse." (Emphasis in original.)

*Plaintiffs' Fourth Amended Petition*

The trial court found, and the parties do not dispute, that the Hickeys' original petition did not name Express and its insurer Federal as defendants, only Mr. Croom and his insurer, Allstate. It is not until the Hickeys' Fourth Amended Petition that the allegations are made of the responsibility of Express as employer for Mr. Croom as its employee in the course and scope of his employment, and the

7

allegation that Mr. Croom's vehicle was leased by Express and insured by Federal. The pertinent portions of the Hickeys' Fourth Amended Petition are not in dispute and were made a part of the trial court's reasons:

8.

Upon information and belief, Alton G. Croom was an employee of Express Courier International, Inc. ("Express") at all times pertinent herein, and he was on a mission for Express at the time of the crash with the Hickey vehicle and therefore acting in the course and scope of his employment at the time of the crash, thereby making Express vicariously liable to plaintiffs for the injuries caused by Croom.

11.

Express had leased the Croom vehicle under its contract with him and had exclusive control over it, and Croom was a permissive user of Express's vehicle, and therefore Croom and his vehicle were insured under the Federal policy, as Express had purchased such coverage under the "Hired and Non-Owned" endorsement, in accordance with 49 U.S.C. § 14102 and 49 C.F.R. § 376.12.

12

When Express hired Croom, it represented to him that the Federal "Hired and Non-Owned" coverage provided liability coverage to Croom, and Express back-charged Croom for the premiums. Therefore, either the Federal policy insured Croom and his vehicle, or, alternatively, plaintiffs are third-party beneficiaries of Express's contract to provide liability insurance, which it breached if there is no coverage under the Federal policy.

### *Allstate's Assignments of Error*

We pretermit a discussion of the first four of Allstate's assignments of error, as each urges as error the trial court's failure to find that Allstate had no duty to defend Express. Instead we will focus on Allstate's Fifth Assignment of Error, the trial court's "finding that Allstate had a duty to defend Express based only upon allegations contained in paragraph 8 of plaintiffs' Fourth Amended and Restated Petition for Damages, despite the language in paragraphs 11 and 12, which unambiguously exclude coverage."

8

In its reasons for ruling, the trial court relied on *Duhon v. Nitrogen Plumbing and Coiled Tubing Specialists, Inc.*, 611 So.2d 158 (La.App. 3 Cir. 1992), in considering only paragraph eight of the Hickeys' Fourth Amended Petition in its finding that Allstate owed a duty to defend Express under the terms of the Allstate Policy.

In *Duhon*, a panel of this court found that Lloyds of London (Lloyds) had a duty to defend Nitrogen Plumbing and Coiled Tubing Specialists, Inc. (NPACT) for the claims of fifteen landowners who sued NPACT for the improper receipt, storage, transport, and disposal of certain toxic and hazardous substances at the NPACT facility next to their property. Decided in 1993, *Duhon* involved complex questions of insurance coverage for the storage and handling of hazardous and toxic substances and extensive provisions that included, "not only a general pollution damages exclusion, but also a supplemental exclusion pertaining to waste disposal operations, the policies further carried a later added endorsement which included special coverage for seepage and pollution." *Duhon*, 611 So.2d at 160.

The court, in *Duhon*, focused on the seepage and pollution endorsement, which required that the seepage and pollution must be the result of an occurrence that was "accidental and was neither expected nor intended by the Assured." *Id*. The policy endorsement stated, "an accident is not considered unintended or unexpected unless it was caused by some intervening event that was neither foreseeable nor intended by the Assured." *Id*. Thus, the seepage and pollution endorsement excluded coverage unless the "occurrence" was "accidental" and was "caused by some intervening event." *Id*. The court then found that the broad allegations of plaintiffs' paragraph six, claiming that the "employees or servants, improperly received, stored, transported, and disposed of certain toxic and

9

hazardous, substances," even if stated in "pertinent part" and "even if taken alone, does not unambiguously exclude the possibility that NPACT actions at its facility on Doc Duhon Road were accidental." *Id.* at 161.

Prior to its determination that paragraphs six and eight provided a basis for Lloyd's to defend NPACT in the litigation, the *Duhon* court stated:

> It is well settled that the allegations of **fact** and not **conclusions**, contained in the petition determine the obligation to defend. *Jackson v. Lajaunie*, 264 La. 181, 270 So.2d 859(1972). Even though the plaintiffs' petition may allege numerous claims for which coverage is excluded under the policy, the duty to defend may nonetheless exist if there is at least a single allegation in the plaintiff's petition under which coverage is not unambiguously excluded. *Applewhite v. City of Baton Rouge*, 380 So.2d 119 (La.App. 1st Cir. 1979).

*Duhon*, 611 So.2d at 160-61 (emphasis added).

It is this portion of the *Duhon* opinion upon which the trial court relied in finding that Allstate owed a duty to defend Express, based only on paragraph eight of the Hickeys' Fourth Amended Petition, and declined to continue the analysis and consider paragraphs eleven and twelve, which clearly exclude Express as an insured under the Allstate Policy. The trial court then read *Duhon* to require that:

> [T]he duty to defend attaches unless coverage is unambiguously excluded by each and every allegation in the petition…Paragraph 8 of the Fourth amended petition only alleges the employment relationship between Croom and Express, and does not make any allegation of reference to whether Croom's vehicle was a leased or hired auto. Under Duhon this allegation must be read separately from the other in assessing duty to defend, Id.at 161.

In its reasons for ruling, the trial court correctly interpreted the terms of the Allstate policy, and stated:

> Under the Allstate policy, the insurer was to "pay those damages which an insured person is legally obligated to pay," for accidents arising out of the "ownership, maintenance or use…" of an insured auto. The policy provides Allstate "will defend an insured person sued as the result of a covered auto accident," and "insured

10

person" included any organization that is allegedly "liable for the use of an insured auto **if** the auto is not owned or hired by [that] person or organization provided the use is by an insured person…"

(Emphasis added.)

However, under paragraphs eleven and twelve of the Fourth Supplemental and Amended Petition, coverage under Allstate's policy is clearly excluded. In *Sims*, 956 So.2d at 589, the supreme court instructed, "An insurance contract is to be construed as a whole and each provision in the contract must be interpreted in light of the other provisions. One provision of the contract should not be construed separately at the expense of disregarding other provisions."

In this case, the trial court erred in failing to take into consideration paragraphs eleven and twelve of the Hickey's Fourth Amended Petition. Clearly, under the terms of the Allstate Policy, Allstate had no duty to defend as Mr. Croom's auto was hired by Express, insured by Federal, and being driven by Mr. Croom in the course and scope of his employment with Express. Allstate's policy language provided coverage and thus, a duty to defend, only "if the **auto** is not owned or hired by this person or organization provided the use is by an insured person under 1. or 2. Above." (Emphasis in original.)

The Hickeys' Fourth Amended Petition clearly stated in paragraphs eleven and twelve that Express "leased" the vehicle insured under the Allstate policy from Mr. Croom in connection with his employment with Express. The vehicle driven by Mr. Croom, which was involved in the accident at issue, was under the exclusive control of Express, with Mr. Croom as a "permissive user of [the] Express' vehicle." "[T]herefore Croom and his vehicle were insured under the Federal policy, as Express had purchased such coverage under the 'Hired and Non-

11

Owned' endorsement" required by federal law, and then back charged Mr. Croom for the policy premiums.

The terms of the Allstate policy unambiguously excluded coverage for "any organization" who "hired" the Croom auto as a part of their business operation and was being driven by Mr. Croom, their insured, at the time of the accident at issue. Paragraphs eleven and twelve stated facts which unambiguously excluded Express as an insured under the terms of the Allstate policy issued to Mr. Croom and thus negated any duty by Allstate to defend Express or reimburse Federal for expenses incurred in defending Express in this litigation.

As further indicated in *Sims*, "Neither should an insurance policy be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *Sims*, 956 So.2d at 589.

In stating that it could not consider the additional two paragraphs of the Hickeys' Fourth Amended Petition, the trial court restricted the provisions of the Allstate policy "beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *Id.* Such a conclusion in this case would require that the insurer of a private vehicle provide a defense to an employer of its insured when the clear provisions of the policy exclude such an entity as an insured person and clearly provide for no "duty to defend."

We find that the trial court erred in finding that Allstate owed a duty to defend Express against the claims of the Hickeys in this litigation. To hold otherwise would lead to an absurd result which would have required Mr. Croom's private insurer, Allstate, to defend his employer, Express, for an accident occurring

12

in the course and scope of Mr. Croom's "hired" vehicle agreement with Express and for which there was insurance coverage with Federal, paid for by Mr. Croom.

## CONCLUSION

For the forgoing reasons, the partial summary judgment of the trial court in favor of Federal Insurance Company and Express Courier International, Inc., finding that Allstate Insurance Company had a duty to defend Express Courier International, Inc. and reimburse Federal Insurance Company for the costs of defense, is reversed. The partial summary judgment filed on behalf of Allstate Insurance Company is granted. All costs of this appeal are assessed against Federal Insurance Company and Express Courier International, Inc.

**REVERSED AND RENDERED.**